D. WALLACE BRYCE, Appellant-Respondent, *v.* LESLIE L. WILDE et al., Defendants; SAMUEL BLOOM, Respondent, and JOHN KARL, Respondent-Appellant.

Third Department, July 6, 1972.

*Lee, LeForestier & Frost* (*Jerome K. Frost* of counsel), for appellant-respondent.

*Wager, Taylor, Howd & Brearton* (*John P. Taylor* of counsel), for respondent and respondent-appellant.

KANE, J. These are cross appeals from an order of the Supreme Court, entered in Rensselaer County, upon a decision of the court at Trial Term and from the judgment entered thereon.

Plaintiff Bryce, a real estate broker, entered into an oral agreement with defendants Wilde to sell their 15-unit apartment house in the City of Troy. The broker accepted the listing as nonexclusive and fixed the sale price at $160,000 in view of the fact that the owners wanted to net not less than $150,000 and he wanted at least a 6% commission. The broker proceeded to contact prospective buyers by printed fliers and newspaper advertisements and the property was shown to several prospects by the broker.

It is disputed as to who initially contacted defendant Karl but, in any event, there came a time when Karl offered $155,000 for the property. Bryce conveyed this offer to the sellers who rejected it. Subsequently, after the property had been removed from the market for a short time, Bryce contacted Karl who then offered $151,000 which was rejected by Bryce without consulting the owners. A short time thereafter Bryce obtained an offer of $160,000 from a prospective purchaser but when he informed the owners, he was told that the property had been sold to defendant Bloom. The property was sold to Bloom for $150,000. The contract of sale to Bloom was executed and within a few days thereafter he assigned the contract to defendant Karl without consideration.

Bryce commenced an action against the Wildes, Bloom and Karl for breach of contract and for tortious interference with contractual relations. After a trial by jury, the trial court dismissed the action against the Wildes, finding that the evidence did not show knowledge of the Wildes that defendants Karl and Bloom were unlawfully interfering with the contractual rights of the plaintiff.

The jury returned a unanimous verdict of $9,000 compensatory damages against Karl and $1,000 punitive damages sever-

ally against Karl and Bloom. The verdicts as to punitive damages were set aside by the court.

In order to recover for tortious interference of contract, there must exist a valid contract between a plaintiff and another; defendant's knowledge of that contract; defendant's intentional interference or intentional procuring of a breach of that contract without justification; and damages (*Israel* v. *Wood Dolson Co.,* 1 N Y 2d 116; *Keviczky* v. *Lorber,* 290 N. Y. 297). Additionally, courts have required more than a showing of qualified probability that the contract would have been completed but for the tortious interference. Plaintiff must show that but for the unlawful actions of the defendant he would have received the contract (*Williams & Co.* v. *Tuttle & Co.,* 6 A D 2d 302, 306).

The jury obviously accepted the plaintiff's version that Karl learned of the property through the efforts of the broker and that Karl would have met the price that the owners were asking with the commission, or that Bryce could have obtained the price of $160,000 from another purchaser had Karl not used Bloom as a dummy to avoid paying Bryce his commission. The only element of the cause of action not readily apparent is that Bryce would have otherwise received the contract, but there is sufficient evidence in the record to support the jury finding that had Karl not successfully circumvented the broker, he would have met the price of $160,000 (*Hornstein* v. *Podwitz,* 254 N. Y. 443; *Pilger* v. *Ramati,* 37 A D 2d 581).

Punitive damages are not recoverable alone although they may be based upon an award of nominal compensatory damages and there must be actual malice shown on the part of a defendant (14 N. Y. Jur., Damages, §§ 177, 178). It was therefore proper to set aside the verdicts awarding punitive damages.

The order and judgment should be affirmed, with costs to appellant-respondent.

SIMONS, J. (dissenting). An action for tortious interference rests upon proof that the defendants intentionally interfered, without justification, with the business rights of plaintiff.[1] (*Campbell* v. *Gates,* 236 N. Y. 457.) In order to recover, the

---

1. The case was submitted to the jury on the theory that defendants Karl and Bloom tortiously induced the breach of the contract between Bryce and the Wildes. Obviously this cause of action could not be sustained because an essential element, breach of the contract between Bryce and the Wildes, did not occur. (*Israel* v. *Wood Dolson Co.,* 1 N Y 2d 116.) The trial court conceded as much in its dismissal of the complaint as to the sellers. The court's stated reason, that the sellers were innocent, would be no defense to a breach of contract action. The dismissal could only be because the Wildes did not breach the contract and did not intentionally interfere with Bryce's rights.

plaintiff must establish that he would have performed the contract, but for the tortious interference of defendants. (*Williams & Co.* v. *Tuttle & Co.,* 6 A D 2d 302.)

There are three reasons why Bryce should not recover here. First, he failed to show any reasonable expectation of being able to perform his contract in accordance with its terms. At no point in the negotiations did Bryce bring the parties together at an agreed price. There is no evidence that Karl ever did or ever would have agreed to pay the broker's asking price of $160,000. Regardless of how Karl's acts in using a middleman to buy the property may be characterized, it is clear those acts did not bear any causal relationship to the failure of Bryce to produce a buyer on the sellers' terms, entitling Bryce to claim a commission, and he is not entitled to recover damages from the buyer for interference with his agreement with Mr. and Mrs. Wilde. (*Altman* v. *Casale,* 25 A D 2d 877; *Dinkin* v. *Raporte,* 26 Misc 2d 639; 29 ALR 3d 1229, 1246.)

Second, Bryce informed Karl that he would not even convey some of his offers, including the final offer, to the sellers. This alone warrants the conclusion that the interference was not actionable but justified. (See *Bereswill* v. *Yablon,* 6 N Y 2d 301, 306.) The defendant had a legitimate self-interest to promote which was frustrated by Bryce.

Third, Bryce's contract with the sellers was a nonexclusive contract. The mere sale of the property did not give Bryce an absolute right to a commission.

The claim that Bryce produced Dr. Fatone ready, willing and able to buy for $160,000 does not justify a recovery. The essence of the cause of action is intentional, unjustified interference by Karl and Bloom with Bryce's rights. There is no evidence that Karl and Bloom knew of Dr. Fatone's alleged offer to buy for $160,000, that the offer existed at the time Bloom and Wilde executed their contract or that Bloom and Karl acted with the intention of frustrating Dr. Fatone's purchase.

Plaintiff contends that to deny recovery in this case renders it impossible for a broker without an exclusive listing to recover for tortious interference with his brokerage contract. The danger that buyers may attempt to obtain a lower price by eliminating the broker's commission is always present. However, there are legitimate interests of the buyer and seller which require protection also. At the time of the agreement with Bryce, the sellers expressly reserved their right to sell the property. If Bryce insisted on a purchase price of $160,000

so that he could receive his full commissions (a most unlikely prospect considering Bryce himself told Karl that the Wildes would sell for $150,000 net and also that he, Bryce, did not have an exclusive listing), and if the broker refused to even convey Karl's offers to the sellers, the buyer and seller were stymied. Under established case law, if Karl had then turned to another broker and negotiated a sale, he would not be liable to plaintiff. (*Newberry & Co.* v. *Warnecke & Co.*, 267 App. Div. 418, 421, affd. 293 N. Y. 698; cf. *Basch* v. *Salvation Army*, 244 App. Div. 230, affd. 271 N. Y. 589; cf. *Bereswill* v. *Yablon*, *supra*.) He ought not to be liable under these circumstances.

The broker has control of the situation. He, not the seller, determines whether he will work under a nonexclusive listing agreement with an inflexible sale price. He can negotiate an exclusive contract, negotiate a nonexclusive agreement with terms to cover the present situation, negotiate a nonexclusive agreement with a more flexible price term, or accept the risks inherent in an agreement such as this.

The judgment and order should be reversed, and the complaint dismissed.

COOKE and REYNOLDS, JJ., concur with KANE, J.; GREENBLOTT, J. P., and SIMONS, J., dissent and vote to reverse in an opinion by SIMONS, J.

Order and judgment affirmed, with costs to appellant-respondent.