**Edward KING, also known as Edward Kerr, Plaintiff–Appellee,**

v.

**Michael MACRI, Edward Kondek, Defendants–Appellants,**

**Rudolf Marrero, Ann Tyler, Defendants.**

**No. 933, Docket 92–7975.**

United States Court of Appeals, Second Circuit.

Argued Jan. 29, 1993.

Decided May 5, 1993.

June Duffy, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen., Ellen J. Fried, Asst. Atty. Gen., on the brief), for defendants-appellants.

David Bolton, New York City (Robert Lewin, Stroock & Stroock & Lavan, on the brief), for plaintiff-appellee.

Before NEWMAN, WINTER, and MINER, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This appeal in a case involving misconduct by law enforcement officers primarily concerns the reasonable amounts to be awarded as punitive damages. The appeal is brought by Michael Macri and Edward Kondek, uniformed court officers employed by New York State, from the May 27, 1992, judgment of the District Court for the Southern District of New York (Peter K. Leisure, Judge), finding them liable, after a jury verdict, for violation of the constitutional rights of plaintiff Edward King. The jury found Macri liable for $75,000 in compensatory damages and $175,000 in punitive damages and found Kondek liable for $75,000 in punitive damages. We affirm as to liability and as to compensatory damages, but order a new trial on punitive damages unless plaintiff accepts a remittitur reducing the punitive damages to $100,000 from Macri and $50,000 from Kondek.

## Facts

This action grows out of an incident on June 20, 1983, in the hallway of the New York Criminal Court in Manhattan, where Macri and Kondek were on duty as court security officers. Though much of the evidence was disputed, the jury was entitled to find the following facts, based primarily on King's testimony. King entered a courtroom to see if his attorney was present and left when he was informed by a court officer that the attorney was not present. Macri, who claimed that King had directed an obscene gesture at him (a claim King denied) followed King out of the courtroom and demanded to see his identification. Macri took King's driver's license and tore it to pieces. Macri then attempted to arrest King, which occasioned a struggle lasting several minutes. Macri was eventually aided in arresting King by several additional court officers, including defendant Kondek and Rudolph Marrero. Marrero was found not liable for any of the ensuing misconduct.

Defendants conceded that they used a great deal of force, including punching King and forcing him to the floor. King testified that the officers continued to punch him after he was handcuffed, and that officer Kondek put him in a choke-hold that made it difficult for him to breathe. Jeffery Dvorin, a lawyer and an eyewitness, testified that Macri continued to hit King after he was "horizontal to the ground."

King further testified that he was strip searched, held in the courthouse, and delivered by court personnel to Rikers Island late in the evening. Defendants filed criminal charges of assault, obstructing governmental administration, resisting arrest, and disorderly conduct. King was held at Rikers Island for a period of two months until his trial. All charges were either dropped prior to trial, dismissed by the Criminal Court, or resolved by a jury verdict of acquittal.

King then instituted this action under 42 U.S.C. § 1983. He charged the defendants with excessive use of force, arresting him without probable cause, and malicious prosecution. Prior to sending the case to the jury, the District Court dismissed the false arrest and malicious prosecution charges against Marrero and Kondek. The jury was given a special verdict form that sought separate findings as to liability, qualified immunity, compensatory damages, and punitive damages as to each of the three causes of action alleged in the complaint. The jury found Macri and Kondek liable for excessive use of force and found Macri liable for arrest without probable cause and malicious prosecution. The jury awarded no compensatory damages on the excessive force and false arrest counts and awarded compensatory damages of $75,000 against Macri on the malicious prosecution count. As to punitive damages, the jury awarded against Macri $50,000 on the excessive force count, $50,000 on the false arrest count, and $75,000 on the malicious prosecution count, for a total punitive award against him of $175,000, and against Kondek, $75,000 on the excessive force count.

### Discussion

#### I. Compensatory damages

■ Macri challenges as excessive the award of $75,000 on the malicious prosecution count. He contends that plaintiff established no lost wages, out-of-pocket expenses, or physical injuries, but merely complained that conditions at Rikers Island were poor. Macri ignores King's testimony that, during his two months of incarceration, he was regularly strip-searched, could not eat or sleep when he chose, suffered mental anguish, and

endured a trial, and that he still has nightmares. These damages were adequately supported and not outside the range of compensatory damages awarded in comparable malicious prosecution cases. *See, e.g., Gentile v. County of Suffolk,* 926 F.2d 142, 153–54 (2d Cir.1991); *Goodwin v. Metts,* 885 F.2d 157, 160, 164–65 (4th Cir.1989), *cert. denied,* 494 U.S. 1081, 110 S.Ct. 1812, 108 L.Ed.2d 942 (1990).

#### II. Punitive damages

Appellants challenge on several grounds the awards of punitive damages. They contend that no punitive damages are available in the absence of an award of compensatory or at least nominal damages, that the District Judge should have reduced the punitive awards because of the defendants' financial circumstances, that the awards were unfairly augmented by jury prejudice resulting from the first Rodney King verdict and the ensuing riot, and that the amounts awarded are excessive. We consider these contentions in turn.

■ 1. *Absence of compensatory or nominal damages awards.* As we have noted, the jury awarded substantial punitive damages on the excessive force and false arrest counts without awarding any compensatory or even nominal damages on these counts. At trial, the plaintiff specifically requested Judge Leisure not to instruct the jury that an award of nominal damages could be made, and defendants made no objection to the absence of such an instruction. Nor did they object to the Court's instruction that "[y]ou may award punitive damages regardless of whether plaintiff has established actual damages."

Though case law is divided on whether punitive damages may be awarded in the absence of a compensatory award, *see* 1 Linda L. Schlueter & Kenneth R. Redden, *Punitive Damages* § 6.1(D)(4)(c), (d) (2d ed. 1989), we have indicated that such an award may be made in section 1983 cases, *see Stolberg v. Members of Board of Trustees,* 474 F.2d 485, 489 (2d Cir.1973), as have most courts of appeals, *see Glover v. Alabama Dep't of Corrections,* 734 F.2d 691, 694 (11th Cir.1984), *rev'd on other grounds,* 474 U.S.

806, 106 S.Ct. 40, 88 L.Ed.2d 33 (1985); *McCulloch v. Glasgow*, 620 F.2d 47, 51 (5th Cir.1980); *Guzman v. Western State Bank of Devils Lake*, 540 F.2d 948, 953 (8th Cir.1976); *Silver v. Cormier*, 529 F.2d 161, 163–64 (10th Cir.1976); *Spence v. Staras*, 507 F.2d 554, 558 (7th Cir.1974); *Gill v. Manuel*, 488 F.2d 799, 802 (9th Cir.1973); *Basista v. Weir*, 340 F.2d 74, 87–88 (3d Cir.1965). We first took this approach at the end of the last century, in a case involving common-law copyright infringement. *Press Publishing Co. v. Monroe*, 73 F. 196, 201 (2d Cir.), *writ of error dismissed*, 164 U.S. 105, 17 S.Ct. 40, 41 L.Ed. 367 (1896).

■ There is some merit to the argument that, even if this approach is generally followed, it is inappropriate for claims of excessive force that are too insubstantial to support any compensatory awards. But to whatever extent that position has merit, it cannot be imposed to alter the award of a jury that was explicitly told, without objection, that it could make a punitive award without any compensatory award. This jury might have first concluded that the excessive force merited an aggregate award of $125,000 and then, following the instructions, elected to impose all of this sum as punitive damages, allocating them $75,000 from Kondek and $50,000 from Macri. Moreover, if any threshold requirement is to be imposed upon an award of punitive damages for a claim of excessive force, it should be only that the evidence would have supported an award of compensatory damages, not that compensatory damages were actually awarded. In the circumstances of this case, the punitive awards were not vitiated by the absence of compensatory or nominal damages awards.

■ 2. *Defendants' financial circumstances.* The defendants presented no evidence at trial of their financial circumstances, but sought to have the District Judge reduce the punitive awards on the basis of post-trial affidavits setting forth their limited financial resources. Normally, such a showing is to be made to the jury considering a punitive damages claim, *see Zarcone v. Perry*, 572 F.2d 52, 56 (2d Cir.1978) (collecting cases), perhaps at a bifurcated hearing on punitive

damages or its appropriate amount, though we have indicated that a district judge has some discretion to receive evidence of a defendant's financial resources in considering a motion to reduce the award by remittitur, *see Smith v. Lightning Bolt Productions, Inc.*, 861 F.2d 363, 375 (2d Cir.1988). In this case, Judge Leisure did not err in declining to augment the record.

■ 3. *Jury prejudice.* Appellants contend that the punitive awards were unduly enhanced as a result of prejudice stemming from the fact that the trial occurred soon after the state court trial of the police officers accused of beating Rodney King in Los Angeles. We see nothing in the record to support this claim. Appellants point to the summation remarks of plaintiff's counsel, urging the jury to award punitive damages so that defendants "will no longer think they're above the law, so that they won't be arrogant and think they can do whatever they want, so that they won't think that because they have a badge and they have a uniform they can violate people's rights." Counsel added that an award of damages would also send "that same message to others in a position to abuse their authority." Similar remarks are made in summations in most police misconduct trials, and are entirely appropriate. The temporal proximity of this trial to the state court Rodney King verdict is not a basis for limiting the normal scope of advocacy.

■ 4. *Size of the punitive damages awards.* We see more merit, however, in appellants' contention that the punitive awards were excessive, assessed solely in light of the facts of plaintiff's claims. Initially, we express some concern that the verdict form invited the jury to make a separate award of punitive damages for each of plaintiff's three causes of action, an invitation the jury accepted in finding Macri liable for punitive damages of $50,000 for excessive force, $50,000 for false arrest, and $75,000 for malicious prosecution.

■ Whether punitive damages awards may be awarded separately with respect to each aspect of a defendant's conduct deemed to merit such an award or whether such

damages should be awarded as a single sum in an amount appropriate for the aggregate misconduct of a defendant has received scant attention in the decided cases. We have expressed some preference for an aggregate award in civil rights cases, *see Gagnon v. Ball*, 696 F.2d 17, 19 n. 2 (2d Cir.1982), and such an award is often returned, *see, e.g., Gardner v. Federated Department Stores, Inc.*, 907 F.2d 1348, 1351 (2d Cir.1990) ($1,500,000 aggregate punitive damages awarded against employer found liable for false imprisonment and battery; award set aside for lack of awareness of employees' wrongdoing); *Basista v. Weir*, 340 F.2d at 77 ($1,500 punitive award for assault, false arrest, and other violations), though separate awards have also been returned, *see, e.g., Posr v. Doherty*, 944 F.2d 91, 95 (2d Cir. 1991) ($10,000 punitive award for excessive force and separate $10,000 punitive award for false arrest); *see also Roy Export Co. Establishment of Vaduz, Liechtenstein v. Columbia Broadcasting System, Inc.*, 672 F.2d 1095, 1098 n. 6, 1107 (2d Cir.) ($300,000 punitive award for common-law copyright infringement and separate $110,000 punitive award for unfair competition), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982). We think district judges retain discretion in determining whether to permit a jury to make separate punitive awards or one aggregate award, but they should bear in mind the risk that separate awards for each component of misconduct might unduly increase the amount of the total award. That risk was present in a case such as this where the misconduct involved in the false arrest is so closely related to the misconduct involved in the malicious prosecution. However, defendants did not object to the verdict form, and its use was not plain error. Nevertheless, we suggest that district judges should ordinarily obtain from juries one aggregate award with respect to each defendant held liable for punitive damages, except in cases involving significantly distinct forms of misconduct.

In this case, the return of separate awards for each component of misconduct, two of which are closely related, and the absence of any compensatory award for the use of excessive force have prompted us to be somewhat rigorous in determining whether our "judicial conscience[s]" are "shocked." *See Zarcone v. Perry*, 572 F.2d at 56. Though some substantial punitive awards have been sustained in police misconduct cases, *see, e.g., Ismail v. Cohen*, 899 F.2d 183 (2d Cir.1990) ($150,000); *Hughes v. Patrolmen's Benevolent Ass'n*, 850 F.2d 876 (2d Cir.) ($175,000 against each of two defendants), *cert. denied*, 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988); *O'Neill v. Krzeminski*, 839 F.2d 9 (2d Cir.1988) ($125,000 against one defendant and $60,000 against another defendant), we consider the aggregate punitive awards of $175,000 against Macri and $75,000 against Kondek excessive. Though recognizing the broad range of authority enjoyed both by juries and by district judges considering claims of excessiveness, we believe a reduction is warranted in this case to reduce the punitive award against Macri to $100,000 and the punitive award against Kondek to $50,000. We will therefore order a new trial with respect to punitive damages unless the plaintiff remits the amounts awarded in excess of these sums.

### III. Qualified immunity

Finally, defendants argue that they are entitled to qualified immunity from each of plaintiff's claims. Conceding that King's relevant rights were clearly established, they claim it was objectively reasonable for them to believe that they did not violate those rights. They also object to the procedure used by the District Court in which factual questions relevant to the qualified immunity defense were submitted to the jury on the verdict sheet. It was entirely proper, however, for the District Court to submit disputed factual questions to the jury, reserving for itself the ultimate legal question of the defense's availability. *See Finnegan v. Fountain*, 915 F.2d 817, 821 (2d Cir. 1990); *Warren v. Dwyer*, 906 F.2d 70, 76 (2d Cir.), *cert. denied*, 498 U.S. 967, 111 S.Ct. 431, 112 L.Ed.2d 414 (1990). Since a reasonable jury could find that reasonable officers, in defendants' position, would not have believed they were acting lawfully, the District Court properly found the defense of qualified immunity unavailable.

## Conclusion

The judgment is affirmed as to liability and compensatory damages, and vacated and remanded as to punitive damages, unless a remittitur is filed.