**ACTION HOUSE, INC., Plaintiff–Counter–Defendant–Appellant,**

v.

**Stanley KOOLIK, Defendant–Counter–Claimant–Appellee.**

**No. 878, Docket 93–7669.**

United States Court of Appeals, Second Circuit.

Argued Jan. 14, 1994.

Decided April 7, 1995.

---

Amy I. Don, Owen Wincig, New York City (Law Office of Bernard Wincig, of counsel) for plaintiff-counter-defendant-appellant.

Matthew C. Gruskin, New York City (Steven W. Heller, of counsel), for defendant-counter-claimant-appellee.

Before: NEWMAN, Chief Judge, WINTER and JACOBS, Circuit Judges.

WINTER, Circuit Judge:

Action House, Inc., appeals from Judge Cedarbaum's order granting appellee Stanley Koolik's motion to vacate a jury's award of $362,000 in punitive damages on the ground that, under New York law, an award of punitive damages cannot be sustained in the absence of an award of compensatory damages. We believe that there should be a new trial on damages.

After some sixteen years of business, Stanley Koolik and Stanley Markowitz, each owner of half the shares (totaling 100) of a successful dress-making concern, Action House, Inc., decided to go their separate ways. This litigation arose from the fractious end of their business relationship.

Action House sought compensatory and punitive damages from Koolik under various tort and contract theories. It claimed that Koolik had taken more than his one-half share of Action House's profits in the three years preceding his withdrawal from Action House.[1] It attempted to prove *inter alia* that Koolik wrongfully used Action House checks to pay for personal expenses and made illicit withdrawals from the petty cash account.

In defense, Koolik argued that the withdrawals were made with Markowitz's knowledge and pursuant to an informal practice agreed to by the principals. Koolik also maintained that any excessive withdrawal of Action House funds was explicitly recompensed through a stock purchase agreement that Koolik and Action House executed on December 15, 1988. By this agreement, Koolik sold his half interest of 50 shares to Action House for $1 and, *inter alia*, agreed to a restrictive covenant for two years. In return, Koolik obtained a release from guarantees he had made and the continuation of some benefits he received from Action House. The parties also agreed to the following provision, labelled Section 16(c):

(c) The SELLER [Koolik] agrees to reimburse the PURCHASER [Action House] for any payments after December 1, 1988 which the PURCHASER is required to or shall make for the account of the SELLER. *Any payments theretofore made by the PURCHASER for the account of the*

---

1. The instant case was consolidated for trial with the case of *Koolik v. Markowitz,* 89–CIV–5367, 1993 WL 204807 (MGC).

*SELLER are hereby waived and need not be repaid by the SELLER.*

(emphasis added). Koolik presented evidence that an earlier version of the Purchase Agreement proposed that Action House buy the shares for $100,000, and that Markowitz's handwritten notes on another draft of the agreement reflected his understanding that the release was meant to waive all claims for payments made by Action House on Koolik's behalf. Koolik also introduced accounting statements purportedly showing that Koolik had repaid all outstanding loans from Action House as of June, 1988.

The jury was instructed on the law and asked to answer specific questions on a verdict form. Although Koolik's counsel objected to the giving of any punitive damage charge to the jury, neither party objected to the content of the jury instructions on either compensatory or punitive damages. The instruction on compensatory damages stated that tort damages should make the party whole while contract damages should give the party the benefit of the bargain. The punitive damage instruction stated:

> In addition to compensatory damages, Action House and Markowitz are seeking punitive damages from Koolik.

> In certain limited circumstances, you are allowed, but are not required, to award punitive damages. Punitive damages are available only with respect to claims involving torts, not claims involving breach of contract or transfer of an interest in real property.

> Punitive damages are available only for egregious conduct that is wanton and reckless. Conduct is wanton and reckless when it is done in such a manner and under such circumstances as to show an utter disregard for the potential consequences of the conduct on the rights and safety of others. Punitive damages are available only for especially shocking and offensive conduct.

> The purpose of punitive damages is to punish a party for shocking antisocial conduct and to deter him and others from committing similar acts in the future.

> In reporting your verdict, you should state separately the amount fixed by you, if any, as compensatory damages and the amount fixed by you, if any, to punitive damages, as the verdict form indicates.

The last paragraph clearly allowed the jury to award punitive damages without making an award of compensatory damages. Action House did not request an instruction on the jury's power to award nominal damages. Koolik did not ask for an instruction that an award of punitive damages could be made only if compensatory damages also were awarded.

The pertinent questions on the verdict form asked the following:

QUESTION ONE
Do you find by a preponderance of the evidence that STANLEY KOOLIK breached his fiduciary duty to ACTION HOUSE by withdrawing funds from ACTION HOUSE'S checking and petty cash accounts?
Yes _____ or No _____
If, and only if, the answer to Question One is "Yes," proceed to answer Question Two.
If the answer to Question One is "No," skip Questions Two and Three and proceed to answer Question Four.

QUESTION TWO
Do you find by a preponderance of the evidence that the Purchase Agreement released STANLEY KOOLIK from liability for all payments made by ACTION HOUSE to or on behalf of STANLEY KOOLIK before December 1, 1988?
Yes _____ or No _____
If, and only if, the answer to Question Two is "No," proceed to answer Question Three.
If the Answer to Question Two is "Yes," skip Question Three and proceed to answer Question Four.

QUESTION THREE
What is the amount of damages to ACTION HOUSE caused by STANLEY KOOLIK'S breach of fiduciary duty?
$ _____.

QUESTION FOUR
Do you find by a preponderance of the evidence that STANLEY KOOLIK misappropriated ACTION HOUSE'S property by withdrawing funds from ACTION HOUSE'S checking and petty cash accounts?
Yes _____ or No _____
If, and only if, the answer to Question Four is "Yes," proceed to answer Question Five.
If the answer to Question Four is "No," skip Questions Five and Six and proceed to answer Question Seven.

*QUESTION FIVE*

Do you find by a preponderance of the evidence that the Purchase Agreement released STANLEY KOOLIK from liability for all payments made by ACTION HOUSE to or on behalf of KOOLIK before December 1, 1988?

      Yes ————— or No —————

If, and only if, the answer to Question Five is "No," proceed to answer Question Six.

If the Answer to Question Five is "Yes," skip Question Six and proceed to answer Question Seven.

*QUESTION SIX*

What is the amount of damages to AC-TION HOUSE caused by STANLEY KOO-LIK'S misappropriation? $ —————.
            * * *

*QUESTION TWENTY–TWO*

Do you award any punitive damages to ACTION HOUSE for STANLEY KOO-LIK'S withdrawals of funds from ACTION HOUSE'S checking and petty cash accounts? You may award punitive damages to AC-TION HOUSE only if you answered "Yes" to either Question One or Four and answered "No" to Questions Two and Five and you need not do so even if you answered "Yes" to either Question One or Four and answered "No" to Questions Two and Five.
$ —————.
           * * *

Neither party objected to the formulation of the verdict questions on compensatory or punitive damages.

After several hours of deliberation, the jurors sent the court two notes with several questions. The jurors asked, *inter alia,* what damages Action House was seeking with regard to Questions 3 and 6. In response, the district court responded that Action House was seeking $358,540 for checking account withdrawals, and $70,177.40 for petty cash withdrawals. With regard to the $358,-540, Koolik's counsel noted that Action House was seeking $363,000, a figure that had been used in Action House's opening statement and Koolik's summation.

After several more hours of deliberation, the jury sent another note asking how long they had to deliberate before being declared a hung jury and whether the "charges" could be "condensed." Judge Cedarbaum instructed the jury that "it is far too soon to be discouraged," and ordered them to continue to deliberate. An hour-and-a-half later, the jury returned a verdict finding, in relevant part, that Koolik had breached his fiduciary duty to Action House and misappropriated funds from Action House. It thus answered Questions One and Four "Yes." It found that Koolik had not been relieved from liability for this claim, answering Questions Two and Five "No." The jury answered Questions Three and Six, "$–0–," thus denying an award of compensatory damages for the breach of fiduciary duty and misappropriation. However, the jury then awarded Action House punitive damages for Koolik's withdrawals of funds from the checking and petty cash accounts, and answered Question Twenty–Two "$362,000."

After the jury's verdict had been read, Koolik's counsel requested a "clarification" of the award of punitive damages. Judge Cedarbaum denied this request as too general, and Koolik's counsel declined to formulate a more specific inquiry. The court on its own initiative then asked the jury to consider whether their answers "$–0–" to Questions Three and Six involved compensatory damages. After returning to the jury room briefly, the jury returned the special verdict form unaltered.

Following the verdict, Koolik moved pursuant to Fed.R.Civ.P. 50 for judgment as a matter of law and, *inter alia,* an order setting aside the jury's award of punitive damages to Action House on the ground that punitive damages are not available under New York law in the absence of a finding of actual damages. Action House responded by, *inter alia,* arguing that Koolik had waived any objection to the punitive damages award and that punitive damages are properly awarded without compensatory damages under New York law. Action House also moved for a partial new trial on compensatory damages under Fed.R.Civ.P. 59(a) in the event the court granted Koolik's motion to set aside the punitive damages award.

Judge Cedarbaum granted Koolik's motion to vacate the punitive damages award. She concluded that such damages were not available under New York law in the absence of an award of compensatory damages and that the jury's refusal to alter the "$–0–" answers to Questions Three and Six upon being asked

to reconsider them necessitated the vacating of the punitive award. Action House appeals from Judge Cedarbaum's granting of Koolik's motion.[2]

■ The district court's instructions on punitive damages were not consistent with New York law, which requires a finding of actual damages before punitive damages may be awarded. *Bryce v. Wilde*, 39 A.D.2d 291, 294, 333 N.Y.S.2d 614, 616 (3d Dep't), *aff'd*, 31 N.Y.2d 882, 340 N.Y.S.2d 185, 292 N.E.2d 320 (1972). In the final sentence of the instruction on punitive damages, the court explicitly stated that the jury should state "separately" the amount of compensatory damages, "if any," and the amount of punitive damages, "if any." On the verdict form, Question Twenty–Two authorized an award of punitive damages if the jury answered "Yes" to either Questions One or Four and "No" to Questions Two and Five. Viewed as a whole, therefore, the instructions failed to inform the jury that it could not award punitive damages unless it also awarded compensatory damages.

**2.** Action House's notice of appeal does not explicitly mention the district court's implicit denial of its motion for a new trial under Fed. R.Civ.P. 59(a). While Fed.R.App.P. 3(c) requires that the appellant "designate the judgment, order or part thereof appealed from," we interpret that requirement liberally. *SEC v. American Bd. of Trade*, 830 F.2d 431, 438 n. 2 (2d Cir.1987); *Conway v. Village of Mt. Kisco*, 750 F.2d 205, 211 (2d Cir.1984). Because both parties seem to have understood Action House's notice of appeal to embrace the implicit denial of its motion for a new trial, and, liberally interpreted, the notice of appeal may fairly be said to do so, we conclude that Action House's challenges to the jury instructions are properly before us.

Action House's notice of appeal also included Judge Cedarbaum's denial of its motion to set aside the jury's award of $52,000 in disability benefits to Koolik on his counter-claim. Action House, however, has not briefed that issue, and we therefore do not consider it.

**3.** Our dissenting colleague states that we may not now review errors in the jury instructions absent a finding of plain error because "neither party objected to the charge given." *Infra* at 1016. We do not believe that Fed.R.Civ.P. 51 and the plain error doctrine are applicable here because, as noted, Action House had no reason to object to the instructions that were read to the jury. When the district court asked the jury to confirm

■ Koolik advances various arguments amounting to a claim that Action House waived its rights in the district court by not objecting to the instructions. The shoe is on the other foot, however, because the instructions favored Action House, and it was under no burden to make objections on Koolik's behalf. Action House certainly had no reason to anticipate that the district court would upset the punitive award because of the finding of "$–0–" compensatory damages.[3] Koolik's strongest argument, of course, is that because the jury found "$–0–" compensatory damages, the court could safely strike the award of punitives because the jury would have necessarily arrived at answers of "$–0–" compensatory and "$–0–" punitive if properly instructed. There is much force in this argument, but it depends upon two assumptions.

The first and most critical assumption is that Action House waived its right to an instruction concerning nominal damages. Had nominal damages been awarded in response to Questions Three and Six, we believe that an award of punitive damages would have been consistent with New York law.[4] *See Bryce*, 39 A.D.2d at 294, 333

that it intended to award "$–0–" compensatory damages, she gave no hint that she was planning to overturn the verdict if the answer was in the affirmative. Moreover, Action House's primary claim on appeal challenges not the instructions given, but rather the decision to overturn a verdict consistent with those instructions. In fact, it was Koolik, not Action House, who belatedly challenged the jury instructions by making a motion for J.N.O.V.

**4.** We are aware that certain language in a recent opinion by the Court of Appeals, *Kronos Inc. v. AVX Corp.*, 81 N.Y.2d 90, 595 N.Y.S.2d 931, 612 N.E.2d 289 (1993), might be interpreted to preclude an award of nominal damages in this case. The *Kronos* court stated that "[n]ominal damages are always available in breach of contract actions ... but are allowed in tort only when needed to protect an 'important technical right.' " *Id.* at 95, 595 N.Y.S.2d 931, 612 N.E.2d 289 (citation omitted). However, *Kronos* dealt with a lower court's holding that, for purposes of starting the statute of limitations, nominal contract damages could also serve as actual damages in a claim for tortious interference with contract. The authorities cited in *Kronos* seem to exclusively concern tortious interference with contract. *See id.* at 95–96, 595 N.Y.S.2d 931, 612 N.E.2d 289 (citing Note, *Damages Recoverable in an Action for Inducing Breach of Contract*, 30 Colum.L.Rev. 232, 238 (1930); Annotation, *Liability for Procuring*

N.Y.S.2d 614. However, Action House could not have anticipated the vacating of the punitive award under the instructions and verdict form given to the jury and thus did not waive its rights. Had Koolik made the objection regarding the relationship between compensatory and punitive damages before the case went to the jury instead of after it returned its verdict, Action House could have protected itself by requesting an instruction regarding nominal damages. An award of such damages might well have been made by the jury, and Koolik should not reap a windfall as a result of his own failure to make a timely objection.

■ The second assumption is that the jury properly understood the difference between the two types of damages. We believe that some doubt exists as to that understanding. There is a possibility that the instructions caused the jury to consider compensatory and punitive damages as alternative forms of relief depending on the degree of culpability. The jury may thus have believed that it should award compensatory damages to redress ordinary wrongs and punitive damages to redress egregious wrongs, but that either should reflect the loss suffered by the injured party. For a lawyer, this would be an obvious misreading of the instructions. However, apart from the use of the labels "compensatory" and "punitive," the instructions offered little differentiation between the types of damage awards except when the instructions described the purpose of punitive damages as punishment and deterrence. A lay person might reasonably believe that having to compensate a party for a loss is a punishment that deters. The verdict form did nothing to dispel any such mistaken view in stating that a "Yes" answer to either Questions One or Four and "No" to Questions Two and Five were sufficient to support

an award of punitive damages. Had New York law regarding punitive damages been correctly stated, no such confusion would have been possible.

Such a possibility would not concern us but for events at trial. Both parties mentioned in arguments to the jury that Action House was seeking $363,000 on one of its tort claims. The instructions stated that punitive damages could be awarded only on tort claims, and the jury posed a question during its deliberations that sought to determine how much Action House was seeking as tort damages. (The court's answer as to one claim stated $358,540 instead of $363,000). The jury then returned a verdict of $362,000 as punitive damages. The jury's questions regarding Action House's tort claims combined with a verdict near the amount that had been argued as compensatory damages for checking account withdrawals give us pause regarding the jury's differentiation between compensatory and punitive damages. We acknowledge that it is speculative to conclude that the jury believed that Action House had suffered $362,000 in damages because of egregious wrongs by Koolik (rather than $362,000 because of ordinary wrongs) and that Action House was thus entitled to punitive damages in that amount. It is quite possible that the jury found that Action House suffered no damage and awarded punitives because Koolik's conduct, however redeemed, was egregious. The point, however, is that we cannot tell, and Action House again never had an opportunity to seek appropriate instructions that would have protected it from the district court's upsetting of the verdict. Whether this possibility would by itself justify a new trial need not be addressed because the nominal damages issue is of much greater significance and in our

Breach of Contract, 26 A.L.R.2d 1227, § 43; W. Page Keeton, Prosser and Keeton on Torts, § 129 (5th Ed.1984) (concerning "Interference with Contractual Relations")). Because Kronos does not address the use of nominal damages to support an award of punitive damages, and because such a broad reading of the opinion would vitiate the holdings of many New York cases permitting the award of nominal damages in this context, see, e.g., Bryce, 39 A.D.2d 291, 333 N.Y.S.2d 614; Reinah Dev. Corp. v. Kaaterskill Hotel Corp., 59

N.Y.2d 482, 465 N.Y.S.2d 910, 452 N.E.2d 1238 (1983); 105 East Second Street Assocs. v. Bobrow, 175 A.D.2d 746, 573 N.Y.S.2d 503 (1st Dep't 1991); Weiss v. Miller, 166 A.D.2d 283, 564 N.Y.S.2d 110 (1st Dep't 1990), aff'd, 78 N.Y.2d 979, 574 N.Y.S.2d 932, 580 N.E.2d 404 (1991), we believe that the Court of Appeals intended its holding to apply only to cases concerning tortious interference with contract. Action House could thus have requested an award of nominal damages in this case.

view itself entitles Action House to a new trial.[5]

On remand, the issues to be determined are whether Koolik repaid all sums wrongfully withdrawn from Action House's checking account and petty cash fund. If not, the jury may then consider whether to award compensatory, nominal and/or punitive damages.

Reversed and remanded for further proceedings.

JON O. NEWMAN, Chief Judge, concurring:

This appeal has divided the panel three ways. Judge Jacobs takes the position, expressed in his dissent, that the judgment of the District Court, disallowing the jury's award of punitive damages, should be affirmed. Judge Winter takes the position, expressed in his opinion for the Court, that a new trial should be ordered. I believe, for reasons set forth below, that the jury's award of punitive damages should be upheld. That three-way division, if unresolved, would have left the case undecided. Believing that result to be unacceptable for a reviewing court, see United States v. Blume, 967 F.2d 45, 50 (2d Cir.1992) (Newman, J., concurring); United States v. O'Grady, 742 F.2d 682, 694 (2d Cir.1984) (in banc) (Newman, J., with whom Winter and Pratt, JJ., join, concurring), I have shifted my vote from reversal and remand for entry of judgment on the verdict to reversal and remand for a new trial. If a majority of the panel will not uphold the jury's award, the result to which I believe the plaintiff is entitled, at least we should order a new trial, rather than affirm and thereby deny the plaintiff all opportunity to recover what the jury awarded. I therefore join Judge Winter's opinion because I believe it is a reasonable outcome that comes as close as a majority of this panel is willing to rule towards affording the plaintiff relief.

What follows are my reasons for initially preferring entry of judgment on the jury's verdict.

Question 22 told the jury:

You may award punitive damages to Action House only if you answered "Yes" to either Question One or Four and answered "No" to Questions Two and Five. . . .

While the wording of this interrogatory technically states two conditions that are necessary for an award of punitive damages, I think it is fairly to be read as instructing the jury that these are the *only* two conditions necessary. The interrogatory was understandably acceptable to the plaintiff. If the wording did not correctly reflect New York law, it was up to the defendant to object and ask the judge to tell the jury that these are not the only conditions, but that there must also be compensatory or at least nominal damages. I concede that the wording of this interrogatory is not as directive as the language in *King v. Macri*, 993 F.2d 294, 297 (2d Cir.1993), where the jury was explicitly told, "You may award punitive damages regardless of whether plaintiff has established actual damages." Because of that jury instruction, we upheld the punitive damages award in *King* despite doubts as to whether the instruction correctly stated the law. *Id.* at 298. The language of Question 22 in the pending case is similarly strong enough to give the plaintiff the benefit of the award the jury made.

Furthermore, the plaintiff argued to the jury that Action House's claim against Koolik was "approximately $363,000." The jury's punitive damages award was $362,000. The jury might well have thought that they could award compensatory damages for a normal wrong and punitive damages for an egregious wrong. This is not a case of a jury picking

5. We normally review a claim of error in a jury charge "to determine 'whether the entire charge, viewed in light of all of the evidence, would tend to confuse or mislead the jury as to the principles of law that apply to the facts.'" *Phelan v. Local 305 of the United Ass'n of Journeymen*, 973 F.2d 1050, 1062 (2d Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1415, 122 L.Ed.2d 785 (1993). The instructions regarding the difference between compensatory and punitive damages

might pass muster under this standard. However, this case is in a different procedural posture in that a verdict consistent with erroneous instructions has been upset, and the question is whether judgment for the defendant should be entered or a new trial held. In such circumstances, arguably, any articulable doubt as to what the jury found or evidence of actual confusion on the jury's part may be sufficient to justify a new trial.

some round number of punitive damages. The jurors awarded the same sum sought by the plaintiff as compensatory damages. To take that sum away after the jury was told that they could award punitive damages if only they answered "yes" to question one and "no" to question four, as they did, is extremely unfair to the plaintiff (and to the jury).

The question is not whether punitive damages are generally available only where compensatory damages are awarded. The question is, even if that is the usual rule in New York, what should happen when a jury is "instructed" (via an interrogatory) that they may act contrary to that rule and the defendant does not object? It is unfair to have a district judge give the "instruction" and then take from the plaintiff the benefit of the verdict that was returned in conformity with that instruction. If the "instruction" was plain error, then a new trial would be warranted, but I am not persuaded that New York law is so clear that we can say that it is plain error to "instruct" a jury that it may award punitive damages without first awarding compensatory damages, at least in a case like this where the punitive damages awarded approximate the compensatory damages alleged to have been suffered.

For these reasons, I would reinstate the punitive damages award. Since a majority does not agree, I join Judge Winter's opinion so that the plaintiff will, on retrial, at least have an opportunity to recover the damages that the first jury awarded.

JACOBS, Circuit Judge, dissenting:

I respectfully dissent because: I see no error in the charge or the jury questionnaire; in any event, no party objected to either; and the amended judgment entered by the district court correctly applies New York law to the findings of the jury.

## A. The Charge

The majority holds that the jury instructions "on punitive damages were not consistent with New York law, which requires a finding of actual damages before punitive damages may be awarded." *Ante* at 1013. Neither party objected to the charge given. Accordingly we may not reverse for error in the charge absent plain error. Fed.R.Civ.P. 51; *Abou–Khadra v. Mahshie*, 4 F.3d 1071,

1078 (2d Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1835, 128 L.Ed.2d 463 (1994). Action House urges—and the majority apparently agrees—that the district court should have adopted the language of the New York Pattern Jury Instruction: "In addition to damages compensating plaintiff for his injuries, you may, but are not required to, allow plaintiff punitive damages." *New York Pattern Jury Instructions—Civil*, No. 2.278 (2d ed. 1990). Instead, the district court charged: "In addition to compensatory damages, Action House and Markowitz are seeking punitive damages from Koolik." The district court's charge thus gave diminished emphasis to the concept that a punitive damages award supplements a compensatory damages award and cannot stand on its own. This distinction is one of emphasis and nuance, and is insufficient to raise an issue of plain error, particularly since New York Pattern Jury Instruction 3.38 is no more emphatic than the charge given by the district court here: "In addition, plaintiff asks that you allow him punitive damages."

In any event, pecuniary injury is an essential element of Action House's claims for breach of fiduciary duty and misappropriation. *See S & K Sales Co. v. Nike, Inc.*, 816 F.2d 843, 847–48 (2d Cir.1987) (breach of fiduciary duty); *Ziring v. Corrugated Container Corp.*, 183 Misc. 600, 605, 49 N.Y.S.2d 686, 692 (N.Y.Sup.Ct.1944) (misappropriation of funds). There is no separate cause of action for punitive damages under New York law. *Santos v. Security and Law Enforcement Employees, Council 82, AFSCME, AFL–CIO*, 80 A.D.2d 554, 435 N.Y.S.2d 357, 358 (2d Dep't 1981). Since a jury instructed without objection or plain error had categorically found that plaintiff failed to establish an essential element of its case, the district court correctly dismissed the complaint.

## B. The Interrogatories

The majority also assigns error to the jury interrogatories on the theory that questions were posed as to compensatory as well as punitive damages without apprising the jury that some compensatory award is a prerequisite for punitive damages. Again, since no timely objection was interposed by either side, our review should be limited to plain error. Here, too, I can find no error of any

kind; all that happened is that the jury was asked more questions than may have been strictly necessary. In my view, however, this surplusage was useful, because it elicited sufficient information to support entry of judgment under either view of a disputed issue of law.

On this appeal, Action House vigorously argues that actual damages are *not* a prerequisite for punitive damages under New York law, and that the punitive award therefore should be upheld notwithstanding the zero award of actual damages. Whether punitive damages can be awarded in the absence of compensatory damages is an issue of law. The jury finding on punitive damages may have been unnecessary in light of the zero award of compensatory damages, but this redundancy preserved the power of the district court—and this Court—to resolve that issue of law either way without need ever to ask a new jury the same question concerning punitive damages at a retrial. The issue of law would have become moot if the jury had awarded zero punitive damages. However, it would have been regrettable if on appeal we ruled that punitive damages *could* be awarded in the absence of actual damages, and the district court then had to conduct a new trial because—having been of the opposite view on the legal question at the time the interrogatories were submitted—the district court failed to ask the punitive damages interrogatory. I do not know whether the district court consciously adopted this precaution, but I do not think that any step that in retrospect appears prudent should be held to be plain error.

The majority—as well as the district court and the parties—properly treat this jury verdict form as a special verdict governed by Fed.R.Civ.P. 49(a). The mandate of Rule 49(a) is to give the jury "such explanation and instruction concerning the material thus submitted as may be necessary to enable the jury to make its findings upon *each issue*" (emphasis added), and that is what was done. The majority deems the jury's responses incongruous, and orders a remand. However, that is not the procedure mandated by Rule 49(a). If clarification is required in respect of a verdict rendered pursuant to Rule 49(a),

'[i]t is the duty of the court to attempt to harmonize the answers, if it is possible

under a fair reading of them.' Thus '[w]here there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way.'

*Auwood v. Harry Brandt Booking Office, Inc.*, 850 F.2d 884, 891 (2d Cir.1988) (citations omitted). This Court has the same " 'responsibility as a reviewing court ... to adopt a view of the case, if there is one, that resolves any seeming inconsistency.' " *Id.* (citations omitted). What is necessary to protect the parties' Seventh Amendment rights to a jury trial is that the judgment not "disregard[ ] any *material* jury finding." *Id.* (emphasis added). Accordingly, a new trial is unnecessary unless it is impossible to harmonize the material findings.

When counsel for Action House argued at the hearing of the post-trial motions that the award of zero compensatory damages was, "in effect, out of sync with the import of the substance of the jury's verdict," the district court responded: "Only if we don't try to reconcile them." Joint Appendix at 461. The district court harmonized the jury findings in a way that makes sense. It is perfectly possible for Koolik to have breached duties he owed the corporation without inflicting any actual damages. Among the fact issues disputed at trial were: whether or not the principals of Action House routinely used company funds for personal expenses and satisfied the resulting obligations by repayment or by reflecting unreimbursed amounts as salary; and whether or not Koolik's loans in particular had been repaid in full by the time he resold his stock to the company. As the district court stated at oral argument of the post-trial motions:

That what Koolik did was unauthorized and reprehensible in a generalized, abstract sense is why they granted punitive damages. But that it didn't really harm the company.

\*　　\*　　\*　　\*　　\*　　\*

I think the jury clearly found that the conduct of Mr. Koolik was egregious. But that's a different issue from whether it caused harm to the plaintiff.

Joint Appendix at 463–64.

Since the jury was properly instructed as to the nature of actual damages, and fixed

them at zero, I must agree with Koolik that a jury properly instructed on the interplay between actual and punitive damages should have fixed punitive damages at zero as well. Brief at 9. The majority sees "much force" in this argument, *ante* at 1013, but concludes that it is subverted by two invalid assumptions. The first such assumption, according to the majority, is that Action House waived its right to an instruction concerning nominal damages. *Ante* at 1013. On this point, the majority holds that there was no such waiver because counsel for Action House could not have anticipated that the punitive damage award would be vacated if the jury fixed the compensatory damages at zero, and therefore had no occasion to seek an instruction on nominal damages. Putting aside for a moment whether nominal damages could support a punitive award in this kind of case, the majority's assignment of blame for the supposed failure to object is much too attenuated: counsel should always anticipate that a judge will apply the law to the material findings of fact. The second supposedly defective assumption is that the jury may have formed an imperfect understanding of the difference between compensatory and punitive damages. *Ante* at 1014. But where (as here) there was no objection and no plain error, the assumption of jury comprehension is one that we make every week. *See, e.g., United States v. Locascio,* 6 F.3d 924, 942 (2d Cir.1993) (upholding convictions resulting in life sentences because there was no objection to jury instructions and because instructions were not plain error), *cert. denied,* —— U.S. ——, 114 S.Ct. 1646, 128 L.Ed.2d 365 (1994).

Even Action House does not argue that the jury conflated compensatory damages with punitive damages. Rather, Action House argues that the jury did in fact find that Action House had sustained actual damages, but was apparently "unable to calculate an exact amount of damages . . . [and therefore] awarded plaintiff 'zero' dollars in compensatory damages." Brief at 19. A few sentences on, Action House adds, "[i]t is plaintiff's contention that the jury would have awarded a minimum of $1.00 in compensatory damages in order to sustain the punitive award, if in fact the jury was cognizant of the law requiring such a minimal prerequisite in actual damages." In short, no one who was at the trial contends that the jury was confused. Action House simply contends that the charge should have been sufficiently detailed to allow the jury to nullify it.

The majority casts the appellate issue in terms of which party failed to object to the jury verdict form and should therefore bear the risk of a supposed error. The fact is that neither party objected to the charge or to the jury verdict form. In my view, the proper question on appeal is whether or not the judgment reflects a correct conclusion of New York law applied to the material findings of the jury. Since, under New York law, a punitive damages award cannot stand in the absence of actual damages, the material and dispositive finding of the jury is that Action House suffered zero compensatory damages. The judgment is therefore sound.

The charge was a proper statement of the law. The jury verdict form elicited findings on each fact issue that is material—or that might be deemed material depending upon the resolution of issues of law disputed between the parties. The judgment thus applies a sound conclusion of law to the findings of a jury instructed without objection or plain error. Such a judgment should be able to withstand appeal. I would affirm the district court's dismissal of the case.

## C. Nominal Damages

There is, however, a further issue. The majority opinion specifically authorizes the district court, on remand, to instruct the jury on nominal damages. *Ante* at 1015. By remanding for a new trial on the issue of nominal damages, this court may be introducing an error into the proceedings.

*Kronos, Inc. v. AVX Corp.,* 81 N.Y.2d 90, 595 N.Y.S.2d 931, 612 N.E.2d 289 (1993), is the leading authority on the allowance of nominal damages in tort actions under New York law. According to *Kronos,* nominal damages "are allowed in tort only when needed to protect an 'important technical right.'" *Kronos,* 81 N.Y.2d at 95, 595 N.Y.S.2d at 934, 612 N.E.2d at 292. As an example of such an "important technical right," *Kronos* points to a landowner's right

to be free from trespass, and notes that trespass is properly granted an "exception from the established rule that actual injury must be shown ... because a continuing trespass may ripen into a prescriptive right and deprive a property owner of title to his or her land." *Id.* (citation omitted). *Kronos* holds that an exception is not warranted for tortious inducement of breach of contract, the claim presented in *Kronos*. *Id.; see also Duarte v. Zachariah,* 22 Cal.App.4th 1652, 1661–62, 28 Cal.Rptr.2d 88, 94 (1994) (nominal damages may not be awarded in negligence actions); *Sanchez v. Clayton,* 117 N.M. 761, 877 P.2d 567, 573 (1994) (same). Similarly, no such exception is warranted for either the breach of fiduciary duty or misappropriation claim at issue in *Action House.* In my view, neither cause of action involves the type of "important technical right[s]" noted in *Kronos.*

In summary, we are remanding—notwithstanding the absence of error in the first trial—so that a second trial can be conducted under the influence of a likely error introduced on appeal.