William **MARTES**, Plaintiff,

v.

**USLIFE CORPORATION, Defendant.**

**No. 95 Civ. 10888 (LAK).**

United States District Court,
S.D. New York.

June 12, 1996.

---

(Tr. at 5.)

Stanley Thaler, Goldman, Horowitz & Cherno, Mineola, for Plaintiff.

Joel M. Miller, John T. Corcoran, Miller & Wrubel, P.C., New York City, for Defendant.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Plaintiff here seeks to recover, essentially on a fraudulent conveyance theory, the amount of a 1989 judgment he recovered against the now liquidated owner of his title insurer. The defendant—the title insurer's former parent, which sold all of the stock in the title insurer in 1985—moves to dismiss the complaint, both as untimely and on the merits. As both parties have submitted affidavits and other materials outside the pleadings, the Court treats the motion as one for summary judgment dismissing the complaint. FED.R.CIV.P. 12(b).

*Facts*

Plaintiff William Martes purchased a title insurance policy from USLIFE Title Insurance Company of Dallas ("Title–Dallas"), then a wholly-owned subsidiary of defendant USLIFE Corporation ("USLIFE"), in or about 1978. (Cpt ¶¶ 3–4)

Although plaintiff's papers are none too clear, it appears that a claim was made against him in or about 1983 in consequence of which Title–Dallas provided him with counsel. (Martes Aff. ¶ 2) It is neither clear from the papers, nor material to disposition of this matter, what the nature or outcome of the claim against Martes was, although he appears to have incurred some loss.

On February 7, 1985, USLIFE sold all of the stock of Title–Dallas to Title Insurance U.S.A. Incorporated ("Title–USA") for $22 million. (Hohn Aff.Ex. B, Purchase Agreement §§ 1, 2.1–2.2, First Amendment § 2) The transaction was approved by the Commissioner of Insurance of the State of Texas. (*Id.* Ex. C) There is no suggestion either in

the complaint or in plaintiff's papers in opposition to the motion that the transaction was not made at arm's length with an unrelated purchaser or that the assets of Title–Dallas were depleted in any way in connection with the sale of its stock to Title–USA.

In 1986, Martes filed suit against Title–Dallas and others, apparently with respect to his claim on his title policy. (Martes Aff. ¶ 3; Cpt ¶ 3) In July 1989, Martes obtained a judgment against Title–USA for $165,000 and Title–USA appealed.[1] (Hohn Aff.Ex. E; Martes Aff. ¶ 4) In November 1989, however, Title USA was placed in receivership by the California Commissioner of Insurance who, on December 7, 1989, ordered its liquidation. (Hohn Aff. Ex. D) In January 1990, when Title–USA's appeal was dismissed, plaintiff was left with a judgment against a company in liquidation and allegedly was prohibited from seeking to execute on the judgment by order of the California authorities. (Martes Aff. ¶ 5)

Plaintiff commenced this action against USLIFE on December 26, 1995. The complaint contains two claims for relief. The first alleges that USLIFE's 1985 transfer of the stock of Title–Dallas to Title–USA was fraudulent as to plaintiff, allegedly a creditor, because it was made with actual intent to defraud, hinder or delay plaintiff and in June 1994 prevented plaintiff from collecting his judgment against Title–USA. The second is based on the same events, claiming that USLIFE's receipt of the $22 million purchase price for the Title–Dallas stock in February 1985 unjustly enriched USLIFE.

### Discussion

The parties have spent a good deal of energy debating the timeliness of plaintiff's claims, which indeed is questionable. But there is a far more direct route to disposition of the case. There was no fraudulent conveyance and no unjust enrichment.

■ The only basis alleged for plaintiff's fraudulent conveyance claim is the contention that USLIFE knew at the time of the sale of Title–Dallas to Title–USA that plaintiff had an unliquidated claim against Title–Dallas and that Title–Dallas "would be left without any assets after the transfer and that the transfer would defraud plaintiff ... as a creditor." (Cpt ¶ 4) This assertion, of course, rests on the premise that USLIFE "transferred the *assets and* stock of" Title–Dallas. (*Id.*) (Emphasis added) The premise, however, is incorrect. As the Purchase Agreement shows, USLIFE sold only the stock. (Hohn Aff. Ex. A) There is no evidence or, for that matter, claim that the assets of Title–Dallas were depleted in connection with the sale. Put in the language of the statute, there was no conveyance by Title–Dallas of anything. *See* N.Y. DEBTOR & CRED. L. §§ 270, 276 (McKinney 1990). Hence, the sale necessarily left Title–Dallas in exactly the same position vis-a-vis its ability to respond to the claims of creditors as it occupied before the transfer, and there was no fraudulent conveyance.

■ Nor did the sale of the stock constitute a fraudulent conveyance of which plaintiff may complain. To begin with, even if a transfer is made with actual intent to defraud creditors, one must be a creditor in order to complain. *Id.* § 276. A "creditor" is one who has a "claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." *Id.* § 270. The only entity that transferred anything here was USLIFE. But plaintiff was not a creditor of USLIFE; he was a creditor only of Title–Dallas. Hence, he lacks standing to complain of any fraud in the sale of USLIFE of its shares in Title–Dallas.

■ Even if plaintiff did have standing, he has failed to allege facts sufficient to state a claim for relief or to adduce evidence sufficient to raise a genuine issue of fact material to the question whether the sale of stock in Title–Dallas was fraudulent as to USLIFE's creditors. Because actual fraudulent intent cannot often be proved by direct evidence,

---

1. The papers do not reveal the fate of Title–Dallas. Judging from the fact that the judgment ultimately returned in plaintiff's favor against Title–USA was based in part of Title–USA's unreasonable refusal to provide plaintiff with benefits to which he was entitled under his policy (Hohn Aff. Ex. E, at 2), it appears that Title–USA in some manner succeeded to the duties and liabilities of Title–Dallas.

the party seeking to upset a transfer generally is given the benefit of an inference of fraud if the circumstances of the transaction bear certain indicia, generally referred to as badges of fraud. *E.g., In re Fill,* 82 B.R. 200, 220 (Bankr.S.D.N.Y.1987); *Marine Midland Bank v. Murkoff,* 120 A.D.2d 122, 128, 508 N.Y.S.2d 17, 21 (2d Dept.1986), *appeal dismissed,* 69 N.Y.2d 875, 514 N.Y.S.2d 1029, 507 N.E.2d 322 (1987) (table). These include:

"(1) a close relationship among the parties to the transaction; (2) secrecy and haste of the sale; (3) inadequacy of consideration; and (4) the transferor's knowledge of the creditor's claim and his own inability to pay it." *ACLI Government Securities, Inc. v. Rhoades,* 653 F.Supp. 1388, 1394 (S.D.N.Y.1987).

In this case, there is a total failure both of allegation and of proof. There is no suggestion that the sale by USLIFE of the stock of Title–Dallas to Title–USA was not an arm's length transaction. The transaction was anything but secret, requiring approval by State regulatory authorities. The interval between the execution of the purchase agreement on July 11, 1984 and the closing in February 1985 was seven months. There is no claim that the consideration was inadequate. And even assuming that plaintiff were to be regarded as a creditor of USLIFE, which of course he was not, there is no evidence that USLIFE would have been unable to respond to plaintiff's claim as a result of its sale of the Title–Dallas stock.[2]

 The unjust enrichment claim is equally specious. Such a claim lies only where the defendant possesses money or received a benefit which in equity and good conscience the defendant should not retain because it belongs to the plaintiff. *E.g., Mente v. Wenzel,* 178 A.D.2d 705, 577 N.Y.S.2d 167, 168 (3d Dept.1991). There is no basis here for any suggestion that USLIFE received or possesses anything that belongs to the plaintiff. USLIFE had no contractual or other relationship with plaintiff. It simply owned stock in Title–Dallas, which had issued an insurance policy to

plaintiff. USLIFE had every right to sell its shares, and it did not prejudice plaintiff in any way by doing so. The buyer, moreover, no doubt paid USLIFE a price that reflected not only the assets of Title–Dallas, but its liabilities as well.

Finally, plaintiff's claims that he was unaware of the sale of Title–Dallas, that USLIFE and Title–Dallas had a common chief executive officer, and so on all are beside the point. Plaintiff's contract was with Title–Dallas. He has neither alleged facts nor offered any evidence that even remotely would warrant piercing the corporate veil. He had no legally protected interest in the identity of Title–Dallas' stockholder or stockholders.

### Conclusion

In sum, this is an entirely frivolous case, even disregarding the serious issues as to its timeliness. Defendant's motion for summary judgment dismissing the complaint is granted.

SO ORDERED.

---

**2.** Nor, as is pointed out above, is there any basis for supposing that Title–Dallas was prejudiced by

the transaction in its ability to pay plaintiff's claim.