MINA INVESTMENT HOLDINGS LTD. and Pentium Capital Holdings, Ltd., Plaintiffs,

v.

Steven W. LEFKOWITZ, Meco Holdings, L.L.C., Mill Equipment & Engineering Corp., Meco Investment Corp., Scoggin Capital Management, L.P., Selig Partners, L.P. and Nippon Credit Trust Co., Defendants.

No. 97 Civ. 1321 RWS.

United States District Court, S.D. New York.

Jan. 20, 1999.

Berlack, Israels & Liberman, New York City, by Anne M. Cunningham, of counsel, Tachau Maddox Hovious & Dickens, Louisville, KY, by David Tachau, Clay M. Stevens, of counsel, for plaintiffs.

Winston & Strawn, New York City, by Ivan Kline, Gary B. Glass, of counsel, for Nippon Credit Trust Co.

## OPINION

SWEET, District Judge.

Plaintiffs Mina Investment Holdings Ltd. and Pentium Capital Holdings, Ltd. ("Plaintiffs") move pursuant to Rule 59(e) of the Federal Rules of Civil Procedure for an order granting reconsideration of this Court's August 10, 1998, opinion dismissing claims of tortious interference of contract, unjust enrichment, recission, and reformation against defendant Nippon Credit Trust Co. ("Nippon"), vacating that opinion, and denying Nippon's motion to dismiss. Alternatively, Plaintiffs move pursuant to Rule 15(a) for leave to file and serve a second amended complaint. For the reasons set forth below, the motion for reconsideration is granted in part and denied in part, and the motion by Nippon to dismiss the amended complaint is granted. Additionally, the motion to amend the amended complaint is granted in part and denied in part. Specifically, Plaintiffs are granted leave to amend the claim of unjust enrichment.

### Parties

Plaintiffs are investment companies incorporated in the British Virgin Islands, with their principal place of business in Switzerland, where their sole director, an entity named Saturn Corporate Services Inc., is located, and where officials of Saturn directed, controlled, and coordinated all of their activities.

Defendant Steven W. Lefkowitz ("Lefkowitz") is a resident of King's County, New York. He has identified himself as chairman of the board of directors and president of defendant MECO Holdings, L.L.C. ("MECO Holdings"), and as chairman of the board of directors of defendant Mill Equipment & Engineering Corporation ("MECO").

Defendant MECO Holdings is a limited liability company organized and existing under the laws of Delaware. Since April 1994, MECO Holdings has owned the majority of the stock of defendant MECO, a Delaware corporation. The management of MECO Holdings was occasionally nominally vested in an entity named Wade Capital Corporation, a Delaware corporation wholly owned and controlled by Defendant Lefkowitz.

Defendant MECO is a Delaware corporation, with its principal place of business in Pittsburgh, Pennsylvania. It is engaged in the manufacture of electrical and mechanical equipment for customers in the metals industry.

Defendant MECO Investment Corp. ("MIC") is a Delaware corporation and a wholly owned subsidiary of Defendant MECO, incorporated on June 16, 1995.

Defendant Scoggin Capital Management, L.P. ("Scoggin") is a domestic limited partnership organized and existing under the laws of Delaware.

Defendant Selig Partners, L.P. is a domestic limited partnership organized and existing under the laws of Delaware. Selig was both an equity investor in MECO Holdings, as well as a party which loaned money to MECO Holdings for the acquisition of MECO.

Defendant Nippon is a bank and trust company existing under the laws of New York.

### Prior Proceedings and Facts

The facts and prior proceedings were set forth in detail in the opinion of August 10, 1998, familiarity with which is assumed. See *Mina Investment Holdings Ltd. v. Lefkowitz*, 16 F.Supp.2d 355 (S.D.N.Y.1998). Those facts and prior proceedings relevant to the instant motion are set forth below.

Plaintiffs filed their original complaint on February 25, 1997, and their first amended complaint (the "Amended Complaint") on

January 12, 1998. The Amended Complaint contains three counts, two of which are directed against Nippon. Count I alleges breach of contract against MECO Holdings, and demands specific performance. Count II alleges tortious interference with contractual relations against all defendants except MECO Holdings, and Count III alleges unjust enrichment, rescission, and reformation of contracts against all defendants.

According to the Amended Complaint, in April 1994, Plaintiffs agreed to loan MECO Holdings $1 million to partially finance the acquisition of MECO. Plaintiffs' loan was made in exchange for certain rights and obligations by MECO Holdings which were set out in an agreement dated April 4, 1994 (the "Purchase Agreement"). Among other things, the terms of the Purchase Agreement provided that Plaintiffs would receive a "senior promissory note" for $1 million plus interest, payable in five years; warrants for the purchase of 100,000 shares of stock in MECO; a covenant by MECO Holdings to furnish additional warrants for the purchase of 50,000 shares of MECO stock on each subsequent anniversary date of the Purchase Agreement in which debt or interest remained outstanding on the promissory note; and various affirmative covenants and limitations (including negative covenants) by MECO Holdings.

The negative covenants provided, *inter alia*, that as long as the note remained outstanding, MECO Holdings would not, nor would it permit any subsidiary to, create, incur, or assume additional debt, issue, sell, or otherwise dispose of any shares of any class of its stock, or enter into or be a party to any contract aside from those existing at the closing.

Prior to the loan agreement with Nippon, the Purchase Agreement was breached on several occasions by defendants other than Nippon. For instance, during May and June 1994, $600,000 was transferred from MECO to MECO Holdings, and Lefkowitz authorized the payment of $150,000 per year to one of his own entities, Wade Capital Corporation. In July 1995, MECO Holdings obtained a $300,000 loan from Scoggin, which was granted seniority over Plaintiffs' loan

and for which Scoggin received warrants for 37,500 shares of stock. In May 1995, MECO and MECO Holdings created MIC to be used to form a joint venture with the Bethlehem Steel Corporation called Chicago Cold Rolling, L.L.C. ("CCR"). MECO and MECO Holdings then arranged to have NationsBank loan approximately $40 million to the joint venture in order to finance the construction of a steel mill outside of Chicago. As part of the financing from NationsBank, MECO Holdings, and MECO obtained a $300,000 loan from Scoggin and other nonparty lenders. Lefkowitz, MECO Holdings, and MECO also arranged to have Scoggin and the other lenders loan them an additional $6 million to obtain a letter of credit for a performance bond required by NationsBank to insure the completion of the CCR mill. In return, Scoggin and the other lenders received warrants to purchase up to one-third of MIC's outstanding shares of stock plus an interest payment made in August 1996 of $158,000 for each investor. Also in 1995, Plaintiffs did not receive warrants for additional 50,000 shares of MECO stock on the anniversary of the Purchase Agreement.

On November 21, 1995, Lefkowitz, MECO Holdings, and MECO acted to accept a commitment whereby Nippon would loan $3 million to MECO, to be used to fund the CCR joint venture. The loan was closed on August 2, 1996. In return for the loan, Nippon received warrants for the purchase of 175,000 shares of nonvoting stock in MECO, which would be convertible into voting stock upon transfer by Nippon. The transaction was completed without consent of Plaintiffs.

About November 1, 1996, Plaintiffs informed Lefkowitz that MECO Holdings was in default because of the multiple breaches of its contractual obligations, and Plaintiffs accelerated MECO's obligation to make full payment on its $1 million loan plus interest. On November 27, 1996, MECO Holdings sent $1 million plus accrued interest to Mina by wire transfer. At the same time, Lefkowitz sent a copy of MECO's financial statements for the period ending September 30, 1996. These statements revealed to Plaintiffs for the first time that Defendants had proceeded

with the Nippon loan without their knowledge or consent.

Plaintiffs allege that Nippon's actions have denied them the benefit of their contractual bargain and have resulted in misappropriated corporate opportunities and financial injury in excess of $75,000.

In *Mina*, Nippon's motion to dismiss the tortious interference with contract claim was granted on the ground that Plaintiffs had failed to allege "but for" causation. It was found that the Purchase Agreement could not be completed regardless of Nippon's conduct by virtue of the prior breaches of the agreement by MECO and MECO Holdings and the allegation that Nippon had conspired or acted with MECO and MECO Holdings to violate the Purchase Agreement. *See Mina*, 16 F.Supp.2d at 360–61. "Inducement" by Nippon was lacking. Additionally, the unjust enrichment claim was dismissed for failure to plead the elements of the cause of action adequately. Moreover, relying on *ABF Capital Management v. Askin Capital Management*, 957 F.Supp. 1308, 1334 (S.D.N.Y.1997), it was found that the Purchase Agreement precluded the claim. *See Mina*, 16 F.Supp.2d at 361–62. Furthermore, the recission claim was dismissed for failure to plead the elements of the cause of action in any way but a conclusory manner and because of the existence of an adequate remedy at law. *See id.* at 362–63. Finally, the reformation claim was dismissed for lack of any allegation of unilateral or mutual mistake induced by fraudulent concealment. *See id.* at 363. In the motion at bar, Plaintiffs do not seek reconsideration of the decision regarding the reformation claim.

Plaintiffs filed the instant motion on August 24, 1998. Oral arguments were heard on October 7, 1998, at which time the motion was deemed fully submitted.

### Discussion

### I. *Plaintiffs' Motion Is Not Time–Barred*

■ As a preliminary matter, Nippon contends that Plaintiffs' motion is time-barred under Local Rule 6.3, which requires that notice of such a motion be served within ten days after the docketing of the decision. Under Rule 59(e), the time to move to alter or amend a judgment expires ten days after "entry" of the judgment, not the signing of the opinion.

The Second Circuit has confirmed that in these circumstances, motions to reargue under Rule 6.3, then Rule 3(j), of the Local Rules of this District must be "brought within ten days of entry of judgment [and] are functionally motions under Rule 59(e), regardless of their label or whether relief might also have been obtained under another provision." *McCowan v. Sears, Roebuck & Co.*, 908 F.2d 1099, 1103 (2d Cir.1990) (citations omitted).

Indeed, under Local Rule 6.4, "[i]n computing any period of time prescribed or allowed by the Local Civil Rules ... the provisions of Federal Rules of Civil Procedure 6(a) and 6(e) shall apply unless otherwise stated." Rule 6(a) of the Federal Rules of Civil Procedure provides that "the day of the act, event, or default from which the designated period of time begins to run shall not be included." The Rule continues that "[w]hen the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation."

Since the opinion was entered on August 10, 1998, the first of the ten days within which the notice of motion for reconsideration was required to be served was August 11. Thus, the tenth day to file was Monday, August 24, 1998, the very day Plaintiffs made their filing. Accordingly, the motion for reconsideration is not time-barred, and will therefore be considered in full.

### II. *Legal Standards for a Motion for Reconsideration*

■ Plaintiffs specify that they brings this motion for reconsideration pursuant to Rule 59(e). A motion for reargument and reconsideration is also brought pursuant to Local Rule 6.3, as noted above. The standards governing Federal Rules of Civil Procedure 59(e) and Local Rule 6.3 are the same. *See Candelaria v. Coughlin*, 155 F.R.D. 486, 490 (S.D.N.Y.1994); *Morser v. A.T. & T. Information Systems*, 715 F.Supp. 516, 517 (S.D.N.Y.1989).

■ Local Rule 6.3 provides in pertinent part: "There shall be served with the notice of motion a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked." Thus, to be entitled to reargument and reconsideration, the movant must demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion. *See Ameritrust Co. Nat'l Ass'n v. Dew,* 151 F.R.D. 237, 238 (S.D.N.Y.1993); *Fulani v. Brady,* 149 F.R.D. 501, 503 (S.D.N.Y.1993), *aff'd sub nom. Fulani v. Bentsen,* 35 F.3d 49 (2d Cir.1994); *East Coast Novelty Co. v. City of New York,* 141 F.R.D. 245, 245 (S.D.N.Y.1992); *B.N.E. Swedbank, S.A. v. Banker,* 791 F.Supp. 1002, 1008 (S.D.N.Y. 1992); *Novak v. National Broadcasting Co.,* 760 F.Supp. 47, 48 (S.D.N.Y.1991); *Ashley Meadows Farm, Inc. v. American Horse Shows Ass'n,* 624 F.Supp. 856, 857 (S.D.N.Y. 1985).

■ Local Rule 6.3 is to be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the court. *See American Alliance v. Eagle Ins.,* 163 F.R.D. 211, 213 (S.D.N.Y.1995) (citing *Caleb & Co. v. E.I. DuPont De Nemours & Co.,* 624 F.Supp. 747, 748 (S.D.N.Y.1985)). In deciding a reconsideration and reargument motion, the Court must not allow a party to use the motion as a substitute for appealing from a final judgment. *See Morser,* 715 F.Supp. at 517; *Korwek v. Hunt,* 649 F.Supp. 1547, 1548 (S.D.N.Y.1986), *aff'd,* 827 F.2d 874 (2d Cir. 1987). Therefore, a party may not "advance new facts, issues or arguments not previously presented to the court." *Morse/Diesel, Inc. v. Fidelity & Deposit Co. of Md.,* 768 F.Supp. 115, 116 (S.D.N.Y.1991); *see Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.,* No. 86 Civ. 6447 (JMC), 1989 WL 162315, at *3 (S.D.N.Y. Aug. 4, 1989). The decision to grant or deny the motion is within the sound discretion of the district court. *See Schaffer v. Soros,* No. 92 Civ. 1233 (LMM), 1994 WL 592891 (S.D.N.Y. Oct. 31, 1994).

■ Upon receiving a notice for reconsideration, the Court may do any of the following. First, the motion may be denied, there-by leaving the original decision unaltered. *See Lehmuller v. Incorporated Village of Sag Harbor,* 982 F.Supp. 132, 135 (E.D.N.Y. 1997); *Walsh v. McGee,* 918 F.Supp. 107, 110 (S.D.N.Y.1996). Alternatively, "the Court can grant a motion to reargue for the limited purposes of considering the effect of an overlooked matter," and after doing so may affirm and/or clarify the original decision. *Lehmuller,* 982 F.Supp. at 136; *see First American Corp. v. Price Waterhouse LLP,* No. M8–85 (RWS), 1998 WL 148421 (S.D.N.Y. Mar. 27, 1998); *Violette v. Armonk Assoc., L.P.,* 823 F.Supp. 224, 226–27 (S.D.N.Y.1993); *Brignoli v. Balch Hardy & Scheinman, Inc.,* 735 F.Supp. 100, 101 (S.D.N.Y.1990). Finally, having granted a motion to reconsider, the Court may vacate the original decision. *See Morin v. Trupin,* 823 F.Supp. 201, 203 (S.D.N.Y.1993); *Travelers Ins. Co. v. Buffalo Reinsurance Co.,* 739 F.Supp. 209, 211–13 (S.D.N.Y.1990).

### III. *The Motion for Reconsideration Is Granted on the Claim of Tortious Interference With Contract, and Upon Reconsideration Nippon's Motion to Dismiss is Again Granted*

■ In *Mina,* Plaintiffs' tortious interference with contract claim against Nippon was dismissed on the ground that Plaintiffs had failed to allege sufficiently that Nippon was the "but for" cause of the breach of the Purchase Agreement. It was found that

> the only factual allegation Plaintiffs rely upon in pleading "but for" causation is Nippon's decision to close the loan without Plaintiffs' consent. As in *Crossland* and *Sharma I,* Plaintiffs allege only that Nippon conspired or acted with MECO and MECO Holdings, and thus do not foreclose the possibility that MECO and MECO Holdings would have violated the Purchase Agreement regardless of Nippon's participation. Thus Plaintiffs have not alleged that there would not have been a breach but for Nippon's conduct.

*Mina,* 16 F.Supp.2d at 360 (citing *Crossland Fed. Sav. Bank v. 62nd and First Assocs., L.P.,* No. 92 Civ. 4056 (LLS), 1993 WL 410461 (S.D.N.Y. Oct. 12, 1993); *Sharma v. Skaarup Ship Management Corp.,* 699

F.Supp. 440 (S.D.N.Y.1988) [hereinafter *Sharma I* ], *aff'd*, 916 F.2d 820 (2d Cir.1990)).

Additionally, Plaintiffs had alleged that on at least nine separate occasions MECO and MECO Holdings had breached the Purchase Agreement prior to the transaction with Nippon. The Purchase Agreement, therefore, could not have been completed regardless of Nippon's conduct. *See id.* Finally, in taking Plaintiffs' facts as true, the Amended Complaint exhibited a blatant disregard by MECO and MECO Holdings of Plaintiffs' rights under the Purchase Agreement. *See id.* Given MECO and MECO Holdings' proclivity toward breaching their contract with Plaintiffs and their inclination not to fulfill their contractual obligations, it was held that "but for" causation on the part of Nippon could not be established. *See id.* at 360–61; *see also Sharma I*, 699 F.Supp. at 447; *Special Event Entertainment v. Rockefeller Ctr., Inc.*, 458 F.Supp. 72 (S.D.N.Y.1978).

Plaintiffs propose that in *Mina* this Court improperly invoked and applied the doctrine requiring Plaintiffs to establish "but for" causation. Their argument is comprised of three parts. First, according to Plaintiffs, the Court overlooked controlling authority of New York's highest court and the Second Circuit that demonstrates an abandonment or nonutilization of the "but for" requirement for alleging a claim of tortious interference with contract. Second, Plaintiffs assert that the "but for" causation doctrine has been criticized by legal scholars. Third, Plaintiffs take issue with the analysis employed by the Court and interpretation of the authorities cited in *Mina*.

▮▮▮▮ Only the first is an appropriate ground for reconsideration. As to the second basis, in their attempt to confirm that application of the "but for" requirement was an error, Plaintiffs invoke a commentary on causation in general by Prosser and Keeton. *See* W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* ¶ 41, at 265–68 (5th ed.1984). As this authority was not put before the Court on the underlying motion to dismiss, it will not be considered.[1] *See e.g.,*

*Ameritrust*, 151 F.R.D. at 238 (S.D.N.Y. 1993). As to the third assertion, Plaintiffs simply quarrel with this Court's interpretation of the "but for" requirement and seek a second attempt to argue their position under the authority employed in *Mina*. Rejection of a party's assessment of the law is not a proper ground on which to seek reconsideration. *See Farkas v. Ellis*, 783 F.Supp. 830, 833 (S.D.N.Y.), *aff'd*, 979 F.2d 845 (2d Cir. 1992); *see also Lehmuller*, 982 F.Supp. at 135 (noting that "courts have reiterated that Rule 6.3 motion is not a motion to reargue those issues already considered when a party does not like the way the original motion was resolved"). Again, a reconsideration motion may not be used as a substitute for appeal. *See Morser*, 715 F.Supp. at 517; *Korwek*, 649 F.Supp. at 1548.

According to Plaintiffs, in choosing to utilize the "but for" requirement the Court overlooked the following authority cited by Plaintiffs in their opposition to the underlying motion to dismiss: *Guard–Life Corp. v. S. Parker Hardware Manufacturing Corp.*, 50 N.Y.2d 183, 406 N.E.2d 445, 428 N.Y.S.2d 628 (1980), *NBT Bancorp Inc. v. Fleet/Norstar Financial Group, Inc.*, 87 N.Y.2d 614, 641 N.Y.S.2d 581, 664 N.E.2d 492 (1996), *Hannex Corp. v. GMI, Inc.*, 140 F.3d 194 (2d Cir.1998), *International Minerals and Resources, S.A. v. Pappas*, 96 F.3d 586 (2d Cir.1996), and *Jews for Jesus, Inc. v. Jewish Community Relations Council*, 968 F.2d 286 (2d Cir.1992).

These authorities, Plaintiffs urge, adopted and employed the analysis contained in the *Restatement (Second) of the Law of Torts* (1979) [hereinafter *Restatement* ] for its description of the requirements under New York law for pleading tortious interference with contractual relations, including the factually sensitive issue of when interference with contracts will be deemed "improper." In doing so, the notion that a plaintiff must show that "but for the unlawful actions of defendant the contract would have been performed," *Special Event*, 458 F.Supp. at 78, was abandoned. Indeed, according to Plain-

---

1. It bears noting that Plaintiffs have included various decisions in support of their position that were not included in opposing the underlying motion to dismiss. As those decisions are neither controlling nor properly before the Court, they will not be considered or analyzed.

tiffs, a "but for" requirement was never imposed by the New York Court of Appeals. However, in *Bryce v. Wilde*, 39 A.D.2d 291, 333 N.Y.S.2d 614 (3d Dep't), *aff'd*, 31 N.Y.2d 882, 292 N.E.2d 320, 340 N.Y.S.2d 185 (1972), it was held that:

> In order to recover for tortious interference of contract, there must exist a valid contract between a plaintiff and another; defendant's knowledge of that contract; defendant's intentional interference or intentional procuring of a breach of that contract without justification; and damages (*Israel v. Wood Dolson Co.*, 1 N.Y.2d 116, 151 N.Y.S.2d 1, 134 N.E.2d 97; *Keviczky v. Lorber*, 290 N.Y. 297, 49 N.E.2d 146). Additionally, courts have required more than a showing of qualified probability that the contract would have been completed but for the tortious interference. Plaintiff must show that but for the unlawful actions of the defendant he would have received the contract (*Williams & Co. v. Collins Tuttle & Co.*, 6 A.D.2d 302, 306, 176 N.Y.S.2d 99, 102).

*Bryce*, 39 A.D.2d at 293, 333 N.Y.S.2d at 616. The decision was affirmed by the Court of Appeals without written opinion.

Plaintiffs recognize that other federal courts and lower state courts have required, as did *Mina*, a plaintiff to allege and prove "but for" causation by the party against whom a tortious interference with contract claim is brought. *See, e.g., Sharma v. Skaarup Ship Management Corp.*, 916 F.2d 820, 828 (2d Cir.1990) [hereinafter *Sharma II* ]; *Michele Pommier Models, Inc. v. Men Women N.Y. Model Management, Inc.*, 14 F.Supp.2d 331, 335–36 (S.D.N.Y.1998); *Segue Limited v. Keds Corp.*, No. 92 Civ. 1955 (RPP), 1994 WL 4269 (S.D.N.Y. Jan. 4, 1994); *Crossland*, 1993 WL 410461, at *4; *Sharma I*, 699 F.Supp. at 447; *Demalco Ltd. v. Feltner*, 588 F.Supp. 1277, 1280 (S.D.N.Y.1984); *Special Event*, 458 F.Supp. at 78; *Rapp Boxx, Inc. v. MTV, Inc.*, 226 A.D.2d 324, 642 N.Y.S.2d 228 (1st Dep't 1996); *Washington Ave. Assocs., Inc. v. Euclid Equip., Inc.*, 229 A.D.2d 486, 487, 645 N.Y.S.2d 511, 512 (2d Dep't 1996). Rather, Plaintiffs urge that this Court not promote "this confusion" and correct the error of imposing a "but for" causa-

tion requirement for the claim. Given *Bryce*, the issue presented is whether the authorities cited by Plaintiffs demonstrate that the requirement is no longer applicable to a tortious interference with contract claim. Contrary to Plaintiffs' submissions, *Guard–Life, NBT, Hannex, International Minerals*, and *Jews for Jesus* are not squarely in conflict with *Mina* and do not support the conclusion that "but for" causation is no longer a viable requirement under New York law.

The *Guard–Life* decision begins by stating that "[a]s a general rule, if no improper means have been employed, a competitor may not be held liable for intentional interference with a contract that is unenforceable for lack of mutuality." *Guard–Life*, 50 N.Y.2d at 187, 406 N.E.2d at 446, 428 N.Y.S.2d at 630. The New York Court of Appeals proceeded to quote the fundamental principle stated by the American Law Institute in the *Restatement*:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

*Id.* at 189, 406 N.E.2d at 448, 428 N.Y.S.2d at 631 (quoting *Restatement* § 766). The court explained that the "keystone of the statement is the adverb 'improperly[,]' a term selected in preference to the phrase 'without justification' appearing frequently in judicial decisions." *Id.* at 189–90, 406 N.E.2d at 448, 428 N.Y.S.2d at 631.

In determining whether an intentional interference is "improper," the court, as Plaintiffs point out, referred to a set of factors set forth in § 767 of the *Restatement*.

> Included among the factors to be considered are the nature of the conduct of the person who interferes (a chief factor in determining whether conduct is improper), the interest of the party being interfered with (whether in an enforceable contract or in a contract voidable and thus unenforceable or terminable at will), and the relationship between the parties.

*Id.* at 190, 406 N.E.2d at 448, 428 N.Y.S.2d at 632 (footnote omitted). In a footnote, the court noted that

> [o]ther factors include the motive and interests sought to be advanced by the one who interferes, the social interests in protecting the freedom of action of that person as well as the contractual interests of the party interfered with, and the proximity or remoteness to the interference of the conduct complained of.

*Id.* at 190 n. 2, 406 N.E.2d at 448 n. 2, 428 N.Y.S.2d at 632 n. 2.[2]

The *Guard–Life* decision continued to explain the difference between interference with an existing contract as opposed to interference with a prospective contractual relation. *See id.* at 190–91, 406 N.E.2d at 448–49, 428 N.Y.S.2d at 632–33. Indeed, the court held that regarding liability for the alleged interference by a competitor with an unenforceable contract, proof of wrongful means, fraud, misrepresentation, threats, or other conduct was required. *See id.*

Although Plaintiffs correctly assert that the *Restatement* factors are utilized to determine whether the interference is "improper"—or as several courts before referred to it, "without justification"—they fail to distinguish between the element of improper conduct, which invokes the concept of intent or manner in which the interference occurred, and that of causation. After all, the New York Court of Appeals, in describing the tort in *Guard–Life*, stated: "One who *intentionally* and *improperly* interferes . . . by *inducing* or otherwise *causing* . . . ." *Id.* at 189, 406 N.E.2d at 448, 428 N.Y.S.2d at 631 (emphasis added). The assessment of whether interference is "intentional" and "improper" is distinct from the determination of whether such improper interference "induced" or "caused" the breach. To be liable for tortious interference with contract not only must the defendant's interference be "im-

proper" and "intentional," but also it must have "induced" or "caused" the breach of contract. The *Guard–Life* court adopted the *Restatement* factors, one of which Plaintiffs insist subsumes the causation requirement, to determine "whether an intentional interference with a contract is 'improper,'" the issue raised by the facts of that case, *id.* at 190, 406 N.E.2d at 448, 428 N.Y.S.2d at 632,[3] and not whether the improper interference actually caused the breach.

*NBT* also does not support a conclusion that the causation or "inducement"/"procurement" requirement has been stripped from the cause of action. The Court of Appeals in *NBT* held that a plaintiff asserting a claim for tortious interference with contract against a competitor must allege that the contract was actually breached. *See NBT*, 87 N.Y.2d at 620–21, 664 N.E.2d at 495–96, 641 N.Y.S.2d at 584–85. In analyzing the facts, the court noted that "where there is an existing, enforceable contract and a defendant's deliberate interference results in a breach of contract, a plaintiff may recover damages for tortious interference with contractual relations even if the defendant was engaged in lawful behavior," but "[w]here there has been no breach of an existing contract, but only interference with prospective contract rights, however, plaintiff must show more culpable conduct on the part of the defendant." *Id.* at 621, 664 N.E.2d at 496, 641 N.Y.S.2d at 585. The court found that because no triable issue of fact regarding wrongful means existed, the court below correctly granted summary judgment dismissing plaintiff's claim for interference with prospective contractual relations. *See id.* at 624–25, 664 N.E.2d at 498, 641 N.Y.S.2d at 587. *NBT* offers no discussion or analysis of the procurement or causation requirement of a claim for tortious interference with contract, nor does it foreclose any such requirement.

---

**2.** It is the proximity to the interference factor that Plaintiffs contend create the causation inquiry. As discussed below, the Court differs in Plaintiffs' assessment of the role these factors play in pleading tortious interference with contract.

**3.** Consequently, it is interesting that in Plaintiffs' opposition to the underlying motion, the use of *Guard–Life* was primarily to evaluate the intent requirement and the range of conduct encompassed by "wrongful means." Additionally, Plaintiffs invoked the case to set forth the factors utilized to determine "improper" interference.

*Hannex* likewise fails to persuade this Court of Plaintiffs' contention. The *Hannex* decision regards a claim for tortious interference with prospective business relations. It confirms, citing *NBT* and *Guard–Life*, that to state such a claim a valid contract is not necessary. *See Hannex*, 140 F.3d at 205. In *Hannex*, it was the requirement of wrongful means that was at issue. The district court having dismissed the action following the close of liability evidence at trial because plaintiff introduced insufficient proof that the defendants engaged in "criminal or fraudulent conduct," the Second Circuit vacated and remanded the issue finding that plaintiff had "adduced [at trial] sufficient evidence to prove fraudulent conduct" to satisfy the "wrongful means" requirement of the claim. *Id.* at 206. The court reasoned that "limiting wrongful means to the categories of 'criminal or fraudulent conduct,' would appeal unduly narrow, inasmuch as the New York Court of Appeals subsequently reiterated the *Guard–Life* standard (which encompasses a considerably wider range of conduct) in *NBT*." *Id.* at 206 n. 9. The wrongful means requirement sheds no light on whether "but for" causation is required for maintaining a tortious interference with contract claim.

*International Minerals* and *Jews for Jesus* undercut Plaintiffs' position. *International Minerals*, quoting *Jews for Jesus*, confirms that "'[t]o maintain a successful cause of action for tortious interference with contract under New York law, a plaintiff must allege and prove the existence of a valid contract and damages *caused* by the defendant's knowing and intentional interference with that contract without *reasonable justification.*'" *International Minerals*, 96 F.3d at 595 (quoting *Jews for Jesus*, 968 F.2d at 292) (emphasis added). *International Minerals* also cites to *Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 94, 612 N.E.2d 289, 595 N.Y.S.2d 931, 934 (1993), which lists the following as elements for the claim: "(1) the existence of a contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional inducement of the third party to breach or otherwise render performance impossible; and (4) damages to plaintiff." *See also Mina*, 16 F.Supp.2d at 359 (stating that a plaintiff must allege "'(1) the existence of a valid contract between itself and a third party for a specific term; (2) defendant's knowledge of that contract; (3) defendant's intentional procuring of its breach; and (4) damages'" (quoting *150 East 58th St. Partners, L.P. v. Wilkhahn Wilkening & Hahn GmbH & Co.*, No. 97 Civ. 4262, 1998 WL 65992, at *1 (S.D.N.Y. Feb. 17, 1998) (*quoting Riddell Sports Inc. v. Brooks*, 872 F.Supp. 73, 77 (S.D.N.Y.1995))))).

In *Jews for Jesus*, the Second Circuit acknowledged that in a tortious interference with contract action, "[t]he key inquiry ordinarily, and in this case, is whether the interference was 'without reasonable justification,' or put differently, was 'improper.'" *Jews for Jesus*, 968 F.2d at 292 (quoting *Guard–Life*, 50 N.Y.2d at 189–90, 406 N.E.2d at 448, 428 N.Y.S.2d at 631). Unlike the case at bar, the "key inquiry" in the cases cited by Plaintiffs was not the causation or inducement element. Both *International Minerals* and *Jews for Jesus*, citing *Guard–Life*, direct that to determine whether the interference was "without justification" or "improper," the New York Court of Appeals has adopted the approach set forth in the *Restatement* § 767, balancing the factors discussed above. *See International Minerals*, 96 F.3d at 595; *Jews for Jesus*, 968 F.2d at 292. As indicated in the statement setting forth the requirements of maintaining the cause of action, in both cases Plaintiffs proclaim the Court overlooked, causation and reasonable justification are distinct and separate elements.

In contrast to the authorities cited in *Mina*, none of the controlling authority invoked by Plaintiffs tackled the issue of causation. Rather, those cases dealt with the requirement of wrongful means or whether, and how to determine if, an interference was improper or without justification.

As recognized by Plaintiffs in their opposition to Nippon's underlying motion to dismiss, a genuine issue presented by Nippon was whether the third element of a tortious interference claim—defendant's intentional procuring of the contract's breach—was pleaded adequately. Both parties asserted that unlawful or improper means or some

level of intent was required. This *improper means* inquiry is related to the "intentional" aspect of the element above. However, the "inducement element requires the plaintiff to establish that but for the allegedly tortious conduct of the defendant, the third party would not have breached her contract." *Michele Pommier Models*, 14 F.Supp.2d at 335 (citing *Sharma*, 916 F.2d at 828; *Innovative Networks Inc. v. Young*, 978 F.Supp. 167, 180 (S.D.N.Y.1997); *Bryce*, 39 A.D.2d at 293, 333 N.Y.S.2d at 616); *see Segue*, 1994 WL 4269, at *1 ("The court in *Sharma* stated that '[i]ntentional procurement of a breach is an essential element of the tort of interference with contractual relations. A plaintiff must allege that "there would not have been a breach but for the activities of defendants." ' " (quoting *Sharma*, 916 F.2d at 828 (citation omitted))).

Despite the numerous authorities invoking the "but for" standard in assessing whether an "inducement" or "procurement" of a breach occurred, Plaintiffs propose, without authority on point by the New York Court of Appeals or the Second Circuit, that Nippon's causal role in producing a breach of the Purchase Agreement is properly analyzed under the sixth factor in the *Restatement* framework, which concerns "the proximity or remoteness of the defendant's conduct to the interference." First, as stated above, this factor is one included in determining whether the interference was without justification or improper. Second, the proximity of conduct described is explained in comment (f) to § 767 of the *Restatement* as follows:

> One who induces a third person not to perform his contract with another interferes directly with the other's contractual relation. The interference is an immediate consequence of the conduct, and the other factors need not play as important a role in the determination that the actor's interference was improper. The actor's conduct need not be predatory or independently tortious, for example, and mere knowledge that this consequence is substantially certain to result may be sufficient.
>
> If, however, A induces B to sell certain goods to him and thereby causes him not to perform his contract to supply the goods to C, this may also have the effect of preventing C from performing his contractual obligations to supply them to D and E. C's failure to perform his contracts is a much more indirect and remote consequence of A's conduct than B's breach of his contract with C, even assuming that A was aware of all of the contractual obligations and the interference can be called intentional. This remoteness conduces toward a finding that the interference was not improper. The weight of this factor, however, may be controverted by the factor of motive if it was the actor's primary purpose to interfere with C's obligation to D and E, or perhaps by the factor of the actor's conduct if that conduct was inherently unlawful or independently tortious. Similar results follow in cases in which the person whose contract was the subject of the initial interference has contracts of his own with his employees, his subcontractors or his suppliers, which he is now unable to perform.
>
> Recovery for A's interference with B's obtaining performance of a contract by C by preventing B from performing himself and thus becoming entitled to C's performance may also be affected by this factor. The injury to B is his failure to obtain the benefit of C's performance. That consequence is an indirect one and if it was not a part of A's motivation but a mere incidental result of his conduct and if that conduct was not independently tortious or unlawful, the interference will ordinarily be held not to be improper.

*Restatement* § 767 comment (f).

Plaintiffs' use and interpretation of comment (f) was rejected by the holding in *Mina*. As Plaintiffs' interpretation was not supported by controlling authority—indeed, none of the authorities presented by Plaintiffs analyzed this factor or surmised that it should replace the "but for" requirement or inform the causation inquiry—its rejection will not be reconsidered here. The *Restatement* factors as a whole were not utilized in *Mina* as they did not pertain to the issue of "inducement" or "procurement," in other words causation.

In disagreeing with *Mina*, Plaintiffs purport that in effect it has been found that only the first inducement of a breach of contract can be actionable, and after the first breach, all subsequent, unrelated breaches, and all subsequent tortfeasors are immune from liability. However, Plaintiffs take a very general and broad approach in reading the opinion. If there had been but one or two prior breaches by MECO and MECO Holdings, this Court would have been on shakier ground in declaring an inclination on the part of MECO and MECO Holdings to breach the agreement at this stage of litigation. Yet nine breaches present a different situation. Nine breaches provide a very strong indication that MECO and MECO Holdings "were not disposed toward honoring" their agreement. *See Special Event*, 458 F.Supp. at 78. Thus the requirement of *inducement* of— procurement of, or causing to induce—the breach on the part of Nippon is vitiated. Indeed, Plaintiffs' allegation that Nippon conspired or acted with MECO and MECO Holdings has the same effect.

Granted, the "but for" requirement adopted may be restrictive. However, the guidance provided by Plaintiffs does not lead to the conclusion that the causation requirement, as applied in *Mina*, contradicts the controlling authority provided by Plaintiffs.

As Plaintiffs have not provided, and did not provide in their opposition to the underlying motion, sufficient controlling authority to undercut the contrary precedents on the claim of tortious interference with contract, Nippon's motion to dismiss is again granted.

IV. *The Motion for Reconsideration Is Granted on Plaintiffs' Unjust Enrichment Claim, and Upon Reconsideration Nippon's Motion to Dismiss Is Again Granted*

 In *Mina*, Plaintiffs' unjust enrichment claim against Nippon was dismissed for failure to allege, in all but conclusory terms, dilution of their equity interest in MECO, the enrichment sustained by Nippon, and how the enrichment was at Plaintiffs' expense. *See Mina*, 16 F.Supp.2d at 361. *Mina* went on to find that assuming *arguendo* that the elements had been pleaded sufficiently, the

Purchase Agreement would preclude a finding that equity and good conscience demand restitution.

Plaintiffs submit that the Court overlooked authority they had presented when it was stated in *Mina* that "Plaintiffs cite no cases in support of their proposition that a party in contract with another who suffered losses when that second party breached by entering into an agreement with a third party may recover from the third party on a claim of unjust enrichment." *Id.* at 362. Plaintiffs are correct, as *Bradkin v. Leverton*, 26 N.Y.2d 192, 257 N.E.2d 643, 309 N.Y.S.2d 192 (1970), was overlooked. Rather, *ABF Capital Management*, 957 F.Supp. at 1334, was cited for the proposition that "[p]laintiffs' own lack of contract with the Defendants does not provide the basis for creating a quasi-contractual cause of action, when the Funds have a contractual cause of action to pursue." However, in *ABF Capital Management* "the unjust enrichment claims against ACM and the Brokers belong[ed] to the Funds, not the individual investors." *Id.* at 1333. No such scenario exists here. In the instant case, MECO and MECO Holdings have no similar basis for asserting any claim against Nippon, nor are Plaintiffs somehow claiming derivatively through MECO or MECO Holdings.

Nonetheless, Plaintiffs continue to be deficient in stating in any way other than in a conclusory manner the elements of unjust enrichment, namely that Nippon was enriched at Plaintiffs' expense and that the circumstances are such that equity and good conscience require that Nippon make restitution. *See Mina*, 16 F.Supp.2d at 361; *Violette*, 872 F.Supp. at 1282. Accordingly, Nippon's motion to dismiss is again granted.

V. *The Motion for Reconsideration Is Denied On Plaintiffs' Claim for Recission*

Plaintiffs' quarrel with the analysis in *Mina* of the recission claim is simply a disagreement with the Court's treatment of that claim. Plaintiffs have failed to point to any controlling authority or facts overlooked in disposition of the underlying motion. Accordingly, reconsideration is denied.

## VI. Plaintiffs' Motion to Amend the Amended Complaint is Granted as to the Unjust Enrichment Claim and Denied as to the Claims of Tortious Interference with Contract and Recission

Rule 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires." Yet, despite the liberal policy toward amendment embodied in Rule 15(a) of the Federal Rules of Civil Procedure, "leave to amend should not be granted where it is futile." *In Re Integrated Resources Real Estate Limited Partnerships Securities Litigation,* 850 F.Supp. 1105, 1128 (S.D.N.Y. 1994) (*citing Bruce v. Martin,* 702 F.Supp. 66, 69 (S.D.N.Y.1988)). Further, leave to amend is properly denied when the amended complaint "would not survive a motion to dismiss." *Id.* (*citing Prudential Ins. Co. v. BMC Indus., Inc.,* 655 F.Supp. 710, 711 (S.D.N.Y.1987)); *see Torres v. Knapich,* 966 F.Supp. 194, 195 (S.D.N.Y.1997).

According to Nippon, the motion should be denied both because Plaintiffs did not attach a proposed second amended complaint to their notice of motion and because no conceivable amendments could cure the legal deficiencies against Nippon.

Generally, absent a proposed amendment, the Court cannot determine whether such amendment would be futile or would survive a dismissal motion. *See Byas v. New York City Dep't of Correction,* 173 F.R.D. 385, 388 (S.D.N.Y.1997); *see also Alston v. New York City Transit Auth.,* No. 97 Civ. 1080, 1998 WL 437154, at *2 n. 2 (S.D.N.Y. Aug. 3, 1998) ("Where the proposed amended complaint does not accompany the motion to amend, the Court may hold the motion in abeyance pending the filing of that proposed complaint, or the Court may deny the motion without prejudice." (citing *Smith v. Planas,* 151 F.R.D. 547, 550 (S.D.N.Y.1993))). Here, however, given the findings in *Mina* concerning the tortious interference with contract and recission claims against Nippon, and the papers submitted by Plaintiffs, an amendment would fail a motion to dismiss.

In *Mina,* Plaintiffs' claim for tortious interference with contract against Nippon was held legally insufficient for failure to plead "but for" causation. Specifically, it was found that the Amended Complaint did not "foreclose the possibility that MECO and MECO Holdings would have violated the Purchase Agreement regardless of Nippon's participation" and that Plaintiffs' allegations of nine separate breaches of the Purchase Agreement by MECO and MECO Holdings before the Nippon transaction demonstrated that the Purchase Agreement "could not be completed regardless of Nippon's conduct." *Mina,* 16 F.Supp.2d at 360. Accordingly, Plaintiffs did not, and cannot do so if given leave to amend, allege adequately that the Purchase Agreement would have been completed but for Nippon's conduct.

Granted, Plaintiffs could add the phrase "but for" to the Amended Complaint. However, pleadings may not be vague or conclusory; rather they must be supported by sufficient allegations of fact. *See id.* at 359; *150 East 58th St.,* 1998 WL 65992, at *2; *S.A.E. Motor Parts Co., Inc. v. Tenenbaum,* 226 A.D.2d 518, 519, 640 N.Y.S.2d 615, 616 (2d Dept.1996); *Washington Ave. Assocs.,* 229 A.D.2d at 487, 645 N.Y.S.2d at 512. Pursuant to the findings in *Mina,* a second amended complaint would suffer from the same defects as the Amended Complaint with respect to the causation element of tortious interference with contract. Any amendment would therefore be futile.

Leave to amend the unjust enrichment claim, however, is granted. Given the recognition on the motion for reconsideration that the Purchase Agreement does not preclude this cause of action, leave to amend the deficient pleading of the elements is appropriate. As stated in Plaintiffs' papers, they can elaborate on the direct effect of Nippon's receipt of 175,000 new warrants convertible into stock and explain the dilution of their equity interest in MECO. For instance, an explanation regarding Nippon's enrichment, how it was at the expense of Plaintiffs, and why good conscience requires that Nippon make restitution is warranted. Plaintiffs will be afforded the opportunity to make such a cure.

258

 Finally, amendment of the recission claim would be futile. To support their claim for recission, Plaintiffs state the following: "Plaintiffs are entitled to equitable relief including ... the recission ... of all agreements and contracts entered into by defendants in violation of plaintiffs' rights, in order to give plaintiffs the benefits of their bargain." (Am.Compl.¶ 64.) In dismissing the recission claim it was declared that:

> Plaintiffs do not cite authority in support of their proposition that where a plaintiff's contract with another party is violated by a second contract between that other party and a third party, plaintiff is entitled to equitable relief by rescission of the second contract. Rather, rescission is not available where a plaintiff has an adequate remedy at law. *See Faden Bayes Corp. [v. Ford Motor Co.]*, 1997 WL 426100, at *2 [(1997)]; *Callanan*, 199 N.Y. at 284, 92 N.E. at 752. In the instant case, Lefkowitz and MECO Holdings allegedly breached the Purchase Agreement with Plaintiffs when they entered into the loan agreement with Nippon. "In New York, 'the law awards damages for breach of contract to compensate for injury caused by the breach....'" *Faden Bayes Corp.*, 1997 WL 426100, at *2 (*quoting Freund v. Washington Square Press, Inc.*, 34 N.Y.2d 379, 314 N.E.2d 419, 357 N.Y.S.2d 857 (1974)). Thus, assuming Plaintiffs' allegations to be true, the appropriate remedy would be damages from Lefkowitz and MECO Holdings for breach of contract.

*Mina*, 16 F.Supp.2d at 363 (referring to *Faden Bayes Corp. v. Ford Motor Co.*, No. 97 Civ. 1867, 1997 WL 426100 (S.D.N.Y. July 30, 1997), and *Callanan v. Powers*, 199 N.Y. 268, 92 N.E. 747 (1910)); *see Boyle v. Kelley*, 42 N.Y.2d 88, 91, 365 N.E.2d 866, 867, 396 N.Y.S.2d 834, 836 (1977); *Babylon Assocs. v. County of Suffolk*, 101 A.D.2d 207, 215, 475 N.Y.S.2d 869, 874 (2d Dep't 1984). Accordingly, Plaintiffs' proposed amendment to the recission claim as stated in their papers would not survive a motion to dismiss.

### Conclusion

For the reasons set forth above, Plaintiffs' motion for reconsideration is granted in part and denied in part, and Nippon's motion to dismiss is granted.

Plaintiffs' motion for leave to file a second amended complaint is granted in part and denied in part. Specifically, Plaintiffs are granted leave to amend the unjust enrichment claim against Nippon and shall do so within twenty (20) days of this decision.

It is so ordered.