MINA INVESTMENT HOLDINGS
LTD. and Pentium Capital
Holdings, Ltd., Plaintiffs,

v.

Steven W. LEFKOWITZ, Meco Holdings, L.L.C., Mill Equipment & Engineering Corp., Meco Investment Corp., Scoggin Capital Management, L.P., Selig Partners, L.P. and Nippon Credit Trust Co., Defendants.

No. 97 CIV. 1321(RWS).

United States District Court,
S.D. New York.

June 15, 1999.

---

Berlack, Israels & Liberman, New York City, Andrew Dash, of counsel, Tachau Maddox Hovious & Dickens, Louisville, KY, David Tachau, Clay M. Stevens, of counsel, for Plaintiffs.

Winston & Strawn, Attorney for Nippon Credit Trust Co., New York City, Ivan Kline, Gary B. Glass, of counsel, for Defendants.

## OPINION

SWEET, District Judge.

Defendant Nippon Credit Trust Co. ("Nippon") has moved pursuant to Rule 12(b)(6); Fed.R.Civ.P., to dismiss a claim against it for unjust enrichment brought by plaintiffs Mina Investment Holdings Ltd. ("Mina") and Pentium Capital Holdings, Ltd. ("Pentium") (collectively, the "Plaintiffs"), on the ground that Plaintiffs have once again failed to state a claim upon which relief may be granted. For the reasons set forth below, Nippon's motion to dismiss the unjust enrichment claim contained in Plaintiffs' Second Amended Complaint is granted.

### The Parties

Plaintiffs are investment companies incorporated in the British Virgin Islands, with their principal place of business in Switzerland, where their sole director, an entity named Saturn Corporate Services Inc., is located, and where officials of Saturn directed, controlled, and coordinated all of their activities.

Defendant Steven W. Lefkowitz ("Lefkowitz") is a resident of King's County, New York. He has identified himself as chairman of the board of directors and president of defendant MECO Holdings, L.L.C. ("MECO Holdings"), and as chairman of the board of directors of defendant Mill Equipment & Engineering Corporation ("MECO").

Defendant MECO Holdings is a limited liability company organized and existing under the laws of Delaware. Since April 1994, MECO Holdings has owned the majority of the stock of defendant MECO, a Delaware corporation. The management of MECO Holdings was occasionally nominally vested in an entity named Wade Capital Corporation, a Delaware corporation wholly owned and controlled by Defendant Lefkowitz.

Defendant MECO is a Delaware corporation, with its principal place of business in Pittsburgh, Pennsylvania. It is engaged in the manufacture of electrical and mechanical equipment for customers in the metals industry.

Defendant MECO Investment Corp. ("MIC") is a Delaware corporation and a wholly-owned subsidiary of Defendant MECO, incorporated on June 16, 1995.

Defendant Scoggin Capital Management, L.P. ("Scoggin") is a domestic limit-

ed partnership organized and existing under the laws of Delaware.

Defendant Selig Partners, L.P. ("Selig") is a domestic limited partnership organized and existing under the laws of Delaware. Selig was both an equity investor in MECO Holdings, as well as a party which loaned money to MECO Holdings for the acquisition of MECO.

Defendant Nippon is a bank and trust company existing under the laws of New York.

### Prior Proceedings and Facts

The facts and prior proceedings are set forth in prior opinions of this Court, familiarity with which is assumed. *See Mina Investment Holdings Ltd. v. Lefkowitz,* 184 F.R.D. 245 (S.D.N.Y.1999) (hereinafter "Mina II"); *Mina Investment Holdings Ltd. v. Lefkowitz,* 16 F.Supp.2d 355 (S.D.N.Y.1998) (hereinafter "Mina I"). Plaintiffs filed their original complaint on February 25, 1997, and their First Amended Complaint on January 12, 1998. The First Amended Complaint contained three counts, two of which were directed at Nippon. Count II of the First Amended Complaint alleged tortious interference with contract against Nippon, and Count III alleged unjust enrichment.

In considering a motion to dismiss, the facts alleged in the complaint are presumed to be true and all factual inferences must be drawn in the plaintiff's favor. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir.1993); *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989). Accordingly, the factual allegations considered herein and set forth below are taken from Plaintiffs' First Amended Complaint and Second Amended Complaint, and do not constitute findings of fact by the Court.

According to the First Amended Complaint, in April 1994, Plaintiffs agreed to loan MECO Holdings $1 million to partially finance the acquisition of MECO. Plaintiffs' loan was made in exchange for certain rights and obligation by MECO Holdings, which were set forth in an agreement dated April 4, 1994 (the "Purchase Agreement"). In part, the Purchase Agreement provided that Plaintiffs would receive warrants for the purchase of MECO stock, and that neither MECO nor any MECO subsidiary would assume additional debt, issue, dispose or sell any class of stock, or enter into or be a party to any contract aside from those existing at the closing.

On November 21, 1995, Lefkowitz, MECO Holdings, and MECO accepted a commitment whereby Nippon would loan $3 million to MECO, to be used to fund a joint venture called Chicago Cold Rolling, L.L.C. ("CCR") between Bethlehem Steel Corporation and MIC—which was created by MECO and MECO Holdings for that very purpose. The loan was closed on August 2, 1996. In return for the loan, Nippon received warrants for the purchase of 175,000 shares of nonvoting stock in MECO, which would be convertible into voting stock upon transfer by Nippon. The loan commitment violated the negative covenants contained within the Purchase Agreement, and was without the consent of Plaintiffs, of which Nippon was allegedly aware. The First Amended Complaint also alleged numerous other violations of the Purchase Agreement which are not germane to the instant motion.

In Mina I, Plaintiffs' claim for tortious interference against Nippon was dismissed on the ground that Plaintiffs had failed to adequately allege "but for" causation. Plaintiffs' unjust enrichment claim against Nippon was also dismissed, on the grounds that the elements of that cause of action had not adequately been pleaded and that the existence of the Purchase Agreement precluded any recovery for unjust enrichment.

In Mina II, this Court granted Plaintiffs' motion for reconsideration of Mina I, but once again dismissed Plaintiffs' unjust enrichment claim on the ground that Plaintiffs failed to adequately allege the ele-

ments of unjust enrichment. In Mina II, however, dismissal was not predicated upon the rationale that the contractual remedies available under the Purchase Agreement precluded recovery for unjust enrichment. Because it was recognized in Mina II that the Purchase Agreement did not absolutely preclude Plaintiffs' claim, leave was granted for Plaintiffs to amend their deficient pleadings.

· On February 8, 1999, Plaintiffs filed their Second Amended Complaint in this action. The Second Amended Complaint largely incorporates the allegations contained within the First Amended Complaint, but also contains additional allegations concerning the impact of the Nippon loan upon Plaintiffs. Most significantly, the Second Amended Complaint specifies that, as of August 2, 1996, Nippon's receipt of warrants for the purchase of 175,000 shares of non-voting stock in MECO resulted in an approximate 15 percent dilution of Plaintiffs' equity interest in MECO.

Nippon filed the instant motion on March 8, 1999. Papers were received by the Court through April 1, 1999, at which time the motion was deemed fully submitted.

### Discussion

Nippon contends that Plaintiffs' amendment of the complaint is merely one of form and not substance, and that Plaintiffs have once again failed to satisfactorily plead the elements of unjust enrichment.

On a Rule 12(b)(6) motion to dismiss, the factual allegations of the complaint are presumed to be true and all factual inferences must be drawn in favor of the plaintiff. See Cosmas, 886 F.2d at 11. A court may not dismiss a complaint unless the movant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). However, a complaint consisting merely of conclusory allegations unsupported by factual assertions cannot meet even the liberal requirements of Rule 12(b)(6), see De

Jesus v. Sears, Roebuck & Co., Inc., 87 F.3d 65, 70 (2d Cir.1996), and a complaint "must contain allegations concerning each of the material elements necessary to sustain recovery under a viable legal theory." Huntington Dental & Med. Co. v. Minnesota Mining & Mfg. Co., No. 95 CIV. 10959(JFK), 1998 WL 60954, at *3 (S.D.N.Y. Feb.13, 1998) (citation omitted).

■ As the Second Circuit has explained, to recover on a theory of unjust enrichment:

[A] plaintiff must prove that the defendant was enriched, that such enrichment was at plaintiff's expense, and that the circumstances were such that in equity and good conscience the defendant should return the money or property to the plaintiff.

Dolmetta v. Uintah Nat'l Corp., 712 F.2d 15, 20 (2d Cir.1983); see Universal City Studios, Inc. v. Nintendo Co., 797 F.2d 70, 79 (2d Cir.1996); ABF Capital Management v. Askin Capital Management, L.P., 957 F.Supp. 1308, 1333 (S.D.N.Y.1997); Martes v. USLIFE Corp., 927 F.Supp. 146, 149 (S.D.N.Y.1996). A claim for unjust enrichment requires a plaintiff to allege that the defendant has already been enriched, see Axel Johnson, Inc. v. Arthur Andersen & Co., 830 F.Supp. 204, 211 (S.D.N.Y.1993), and that the enrichment came at plaintiff's expense. See Huntington Dental & Med., 1998 WL 60954, at *6.

■ In both Mina I and II, it was found that Plaintiffs failed to allege, in anything other than conclusory terms, the dilution of their equity interest in MECO, the enrichment sustained by Nippon, and the manner in which that enrichment was at Plaintiffs' expense. In Mina II, Plaintiffs were granted leave to amend their complaint and re-plead the elements of unjust enrichment, and to elaborate upon the "direct effect of Nippon's receipt of 175,000 new warrants convertible into stock and explain the dilution of their equity interest in MECO." 184 F.R.D. at 257. While the Second Amended Complaint provides superficial elaboration on the mechanism by which Plaintiffs' warrants were diluted, it

provides little beyond that which was already before the Court in Mina II.

To be sure, the First Amended Complaint did not specify the specific dilution percentage, set a date upon which dilution should be reckoned, or make clear the specific number of Plaintiffs' warrants to be compared with Nippon's 175,000 shares. However, the Second Amended Complaint adds virtually nothing of substance to its predecessor. The First Amended Complaint sets forth facts from which generic warrant dilution could be (and was) inferred, given that Nippon was granted warrants for 175,000 shares in contravention of an agreement permitting no additional issuance of shares, and the Purchase Agreement allotted Plaintiffs a specified number of warrants. The First Amended Complaint also indicates that Nippon knowingly disregarded MECO's violation of the Purchase Agreement and Plaintiffs' failure to consent to the Nippon loan. While the Second Amended Complaint makes these claims more explicit, the raw material for Plaintiffs' current unjust enrichment claim against Nippon was already present in the First Amended Complaint.

The Second Amended Complaint fails to provide any explanation of the nature of Nippon's enrichment, how that enrichment was or is at the real expense of Plaintiffs, and why good conscience requires that Nippon make restitution in this case. To do this, given the nature of Nippon's loan to MECO, it is not enough to merely state that Plaintiffs' warrants have been diluted by 15 percent, especially given that the warrants have yet to be exercised, do not manifest a current or past equity interest in MECO, and were obtained in exchange for monies that were loaned to and used by MECO—the self-same company whose warrants are held by Plaintiffs. Plaintiffs are correct in observing that the dilution itself has already occurred by virtue of the Nippon loan arrangement, but nowhere do they indicate how this has resulted in any real enrichment at their expense.

In Mina II, Plaintiffs were invited to explain how the dilution in this case requires restitution, how Nippon was actually enriched by its receipt of the warrants in exchange for loaning MECO $3 million, and how this loan arrangement ultimately came at Plaintiffs' expense. Plaintiffs have failed to respond to this invitation.

Nippon has hypothesized that the Nippon loan, while it technically resulted in the dilution of Plaintiffs' warrants, may ultimately have enhanced the value of Plaintiffs' potential stake in MECO, and that a portion of that loan was likely used to pay Plaintiffs in full for the original $1 million loan to MECO Holdings. While the Court does not rely on this particular rationale in deciding the instant motion, the Second Amended Complaint does little to explain how the abstract dilution of Plaintiffs' warrants has created a situation in which equity should intervene to command restitution.[1] Further, Plaintiffs' allegation that Nippon "may" become unjustly enriched in the future cannot remedy this deficiency.

### Conclusion

For the reasons set forth above, Nippon's motion to dismiss Plaintiffs' claim for unjust enrichment is granted.

It is so ordered.

---

1. Defendants have also claimed that, as Plaintiffs' rights under the warrants have not yet been exercised, Plaintiffs could not yet have suffered a real dilution in their equity interest in MECO—thus precluding any recovery for unjust enrichment. Given Plaintiffs' failure to supply allegations remedying the deficiencies found in Mina I and Mina II, however, the Court need not reach the question of when unexercised warrants may properly be the subject of a claim for unjust enrichment. *Cf. Malon Resources Corp. v. Midland Bank*, No. 96 CIV. 7458(RPP), 1997 WL 403450, at **3–4 (S.D.N.Y. July 17, 1997) (finding that failure to cancel or return warrants did not give rise to unjust enrichment claim because Warrant Agreement specifically provided for their retention, not because improper retention of warrants could not form basis for unjust enrichment claim).